IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| DAKOTAH EARLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF CHICAGO, ILLINOIS, a municipal ) <br> corporation; LORI LIGHTFOOT, in her capacity ) <br> as Mayor of the City of Chicago; DAVID O. ) <br> BROWN; JOHN DOE 1, a City of Chicago Police ) <br> Officer; JOHN DOE 2, a City of Chicago Police ) <br> Officer; and, the CITY OF CHICAGO, ILLINOIS, ) <br> a municipal corporation, as indemnitor, ) <br> ) <br> Defendants, ) | Case No. 23-cv-0801 <br><br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff, DAKOTAH EARLEY, ("Earley" or "Plaintiff"), by his attorneys, Maxwell J. Brown, Esq., Amanda M. Martin, Esq., and Cass T. Casper, Esq., DISPARTI LAW GROUP, P.A., brings this Complaint against the CITY OF CHICAGO ("City" or "Defendant City"), LORI LIGHTFOOT ("Lightfoot"), DAVID O. BROWN ("Brown"), and the JOHN DOE Defendants (collectively hereinafter, "Defendants") and alleges as follows:

### JURISDICTION & VENUE

1. This Court has jurisdiction of the action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. §§ 1331, 1343, and the Due Process and Equal Protection Clauses of the 14th Amendment of the United States Constitution.

2. This Court has jurisdiction over the state law claims pursuant to 42 U.S.C. § 1367 because such claims so relate to the federal claims as to form part of the same case and controversy.

3. This Court has jurisdiction to award attorneys' fees under 42 U.S.C. § 1988.

4. Venue is proper under 28 U.S.C. § 1391 because the conduct hereafter alleged to be unlawful was committed within the jurisdiction of the Northern District of Illinois.

**PARTIES**

5. Plaintiff, Dakotah Earley, is a legal adult and resident of Cook County, Illinois.

6. Defendant City of Chicago, Illinois ("City") is an Illinois Municipal Corporation. The City has indemnification responsibilities for misconduct of local governmental actors pursuant to § 9-102 of the Local Governmental and Employees Tort Immunity Act (745 ILCS 10/9-102). It is sued for purposes of liability and in its capacity as indemnitor of the other Defendants.

7. Defendant Lightfoot is the duly-elected Mayor of the City of Chicago.

8. At all times, Lightfoot is a final policymaker with the City of Chicago in that she is the chief executive officer for the City and has responsibility and authority to pass and enact policies of the City, including the non-pursuit policy discussed herein.

9. At all times, Lightfoot acted under color of law.

10. Defendant Brown is the duly-appointed Superintendent of the Chicago Police Department.

11. At all times, Brown is a final policymaker with the City of Chicago in that he is the chief executive officer for the City of Chicago's Police Department, and he has responsibility and authority to pass and enact policies of the City, including the non-pursuit policy discussed herein.

12. At all times, Brown acted under color of law.

13. The John Doe Defendants are City of Chicago Police Officers assigned to work in or about Area 3 between May 5, 2022 and May 7, 2022. They are sued in their individual capacity and will be identified through the discovery process.

14. At all times, the John Doe Defendants acted under color of law.

**FACTUAL ALLEGATIONS**

15. On May 6, 2022, Earley was walking near his home in the Lincoln Park neighborhood of Chicago when he was robbed and shot by a pair of thieves.

16. One of the gunmen shot Earley twice in his back and once in the head, leaving him prone on the sidewalk in critical medical condition.

17. Earley subsequently was hospitalized for months while he recovered, which recovery involved a partial amputation of his leg, and abdominal and jaw surgery.

18. During his recovery, Earley was unable to talk and was relegated to communication through hand signals and writing.

19. Tyshon Brownlee ("Brownlee"), later identified as the shooter, was later charged with attempted murder are armed robbery of Earley.

20. At the time of the shooting, Brownlee had been involved in a spree of robberies and violent acts in what can only be described as a violent rampage on Chicago's north side.

21. Just before approximately 2:00 a.m. on May 6, 2022, Chicago police dispatchers notified patrol officers that a GPS tracker had located a stolen BMW in the vicinity of Northerly Island, east of Soldier Field.

22. Such stolen vehicle, later identified as the get away vehicle used by Brownlee following his shooting of Earley, had been taken from an armed robbery victim in Lakeview the previous night.

23. Police subsequently declined to follow vehicle.

24. Approximately an hour after the police were notified of the stole vehicle, the vehicle appeared at the intersection of Webster and Wayne in Lincoln Park, a gunman (presumably, Brownlee), got out, ambushed Earley, and shot him in the head and back while robbing him.

25. Earley's damages as a result of the shooting were unspeakable and as outlined herein, including, but not limited to, the partial loss of his leg, partial permanent brain injuries, speech impediments, mobility problems, and post-traumatic stress and overwhelming emotional distress.

26. Subsequent to Earley's shooting, the Chicago Police Department acknowledged that

Brownlee and his crew had been responsible for a string of extremely violent robberies and hold up's on the north side since May 4, 2022.

27. In nearly each instance of Brownlee's illegal activities, police declined to take action to stop him, pursue the vehicle he was driving in, or otherwise to act in any way to stop the violent, criminal acts.

28. The Department, as a matter of official police policy, justified its failure to intervene as to Brownlee on the basis of a non-pursuit policy.

29. At the time of Earley's shooting, however, the Chicago Police Department was in possession of an enormous amount of factual information that it could have used to apprehend Brownlee and his crew, including, but not limited to:

   a. The BMW was taken from a man who was robbed at gunpoint on the 2900 block of North Clark the night before.

   b. That within minutes of the Clark Street robbery, a group of armed men fired shots at another robbery victim in nearby Lincoln Park. That victim was not injured.

   c. Four hours before police spotted the car on the Museum Campus, a woman was robbed at gunpoint on the 3000 block of North Racine. She memorized the license plate number of the gunman's getaway car and gave it to police. The license plate number she gave perfectly matched the BMW's plate.

   d. That woman told officers the gunman also robbed another woman across the street from her, but she didn't know where the victim went.

   e. Minutes after the women were robbed, a man was robbed at gunpoint four blocks south on Racine.

   f. All of the robberies involved armed men wearing ski masks who left a vehicle and confronted people who were walking down streets.

   g. Just before 2:00 a.m. on May 6, Chicago Police Dispatchers notified patrol officers that the

4

GPS tracker had located the stolen BMW in the Northerly Island area; the police initially approached the vehicle, but then let it go. Police stated over the radio "[w]e're not following. We're not chasing. Show us heading into [the station] to do an eluding report." Just about an hour later, Earley was shot by the occupants of the vehicle.

30. Despite having the aforementioned facts, the Police Department's non-pursuit policy that it had enacted caused the Police to not stop the BMW, stop Brownlee and his crew, and to protect the citizens of Chicago, including Earley.

31. At all times, Defendants Lightfoot and Brown acted with extreme recklessness in enacting and maintaining the non-pursuit policy, knowing full well that there was a high probability that the policy would chill and hamper rank-and-file officers from engaging in pursuits to stop criminals such as Brownlee and his crew.

32. At all times, Defendants Lightfoot and Brown acted with deliberate indifference in enacting and maintaining the non-pursuit policy, knowing full well that there was a high probability that the policy would chill and hamper rank-and-file officers from engaging in pursuits to stop criminals such as Brownlee and his crew.

33. As a direct and proximate cause of the Police Department's non-pursuit policy, Earley was shot in head and back and suffered grave damages that all could have been prevented but for the Department's enactment of its unreasonable non-pursuit policy.

34. As a direct and proximate cause of the Police Department's failure to act on at least all of the information outlined herein to stop Brownlee and his crew, Earley was shot in head and back and suffered grave damages that all could have been prevented but for the Department's failure to act.

35. At all times, the John Does acted in willful and wanton fashion by following the non-pursuit

policy, by misjudging the application of the balancing test in the non-pursuit policy, but engaging in a course of action showing a deliberate indifference and/or conscious disregard for the safety of others, including in this instance Earley.

36. At the same time, the stolen vehicle had a GPS monitoring system that was being monitored, on belief, by the dealership and the police were at all times aware that they could have apprehended the vehicle on the basis of the GPS tracking system.

### COUNT I: 42 U.S.C. § 1983 MONELL CLAIM FOR DEPRIVATION OF 14TH AMENDMENT RIGHT TO DUE PROCESS BASED ON THE ENACTMENT AND MAINTANENCE OF THE NON-PURSUIT POLICY
(Plaintiff v. Defendants Chicago, Lightfoot, and Brown)

37. The Plaintiff realleges each foregoing paragraph of this Complaint as if fully restated here.

38. This judicial district recognizes that the state's failure to protect an individual against private violence may be a violation of the Due Process Clause where either (i) there is a special relationship between the parties, or (ii) the state-created danger doctrine applies. *Arriaga v. Dart*, 2021 WL 308829 (N.D. Ill 2021); *Estate of Her v. Hoeppner*, 939 F.3d 872 (7th Cir. 2019); *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993); *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989).

39. A due process claim based on the state-created danger exception requires proof that (1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question "shocks the conscience." *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015) (quotation marks omitted). The third element—conscience-shocking conduct—requires a culpable state of mind equivalent to deliberate indifference. *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007); *see Slade v. Bd. of Sch. Dirs. of Milwaukee*, 702 F.3d 1027, 1033 (7th Cir. 2012).

40. At all times, Plaintiff has a federal law right to bodily integrity as well as a right not to be placed

in danger by state officials.

41. At all times, Chicago's Police Department affirmatively acted and maintained an official non-pursuit policy that chilled and hampered officers in their ability and willingness to stop criminals, such as Brownlee.

42. The non-pursuit policy has specifically caused a widespread chilling of police activity by officers for fear of civil and criminal liability among officers for engaging in pursuit activities.

43. By the City of Chicago's maintenance of this specific non-pursuit policy, it has created and increased the danger that persons such as Plaintiff will be the victims of criminal activity as occurred in his case.

44. Such policy was at all times the moving force behind Plaintiff's injuries in that but-for this policy, Chicago's police force would have apprehended Brownlee and his crew and prevented Earley's shooting.

45. As applied to Earley's case, the non-pursuit policy shocks the conscience in that it caused officers to omit any action to apprehend Brownlee despite being the possession of facts regarding his and his crew's extremely violent behavior and his direct whereabouts.

46. At all times, Defendants Lightfoot's and Brown's actions in passing and maintaining the policy shocks the conscience in that they acted with extreme recklessness in enacting and maintaining the non-pursuit policy, knowing full well that there was a high probability that the policy would chill and hamper rank-and-file officers from engaging in pursuits to stop criminals such as Brownlee and his crew.

47. At all times, Defendants Lightfoot's and Brown's actions in passing and maintaining the policy shocks the conscience acted in that they acted with deliberate indifference in enacting and maintaining the non-pursuit policy, knowing full well that there was a high probability that the policy would chill

and hamper rank-and-file officers from engaging in pursuits to stop criminals such as Brownlee and his crew.

48. No reasonable police officer, in the face of knowledge about Brownlee's activity and whereabouts, would have declined to pursue him except for the non-pursuit policy that the Department affirmatively enacted.

49. In this case, the Defendants' actions are not merely negligent or a product of bad decisions, but amount to gross recklessness in that Defendants were specifically aware of the danger posed by Brownlee and his crew, were specifically aware of locations to apprehend him, but because of the non-pursuit policy that the City enacted Brownlee was able to continue his violent rampage throughout the City.

50. As a direct and proximate cause of the City's enforcement of the non-pursuit policy in this case, Earley suffered the damages outlined herein.

51. Based on the Defendants' enactment of, maintenance of, and following the non-pursuit policy, the state affirmatively created a danger for members of the public and Plaintiff was a foreseeable victim. *See, e.g.*, *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993).

52. The GPS tracking system in the vehicle allowed Chicago to track the real-time location of the vehicle to include immediately within the vicinity of Earley and at multiple places in the City.

53. Everyone around the stolen vehicle, including Plaintiff, was a foreseeable victim of Brownlee and his crew, and Defendants at all times were aware of the vehicle's location due to reports and the GPS tracking system.

54. Qualified immunity does not apply in this case. *See White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *Archie v. City of Racine*, 847 F.2d 1211 (7th Cir. 1988); *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993).

For the foregoing reasons, Plaintiff requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all appropriate relief, to include compensatory

damages in an amount to be determined at trial, make whole relief for all losses resulting from Defendants' deprivations of Plaintiff's constitutional rights, injunctive relief requiring Defendants to cease and desist from failing to act as outlined herein, reasonable attorneys' fees and litigation costs, pre-judgment interest, and all other available and appropriate relief.

### COUNT II: 42 U.S.C. § 1983 VIOLATION OF 14TH AMENDMENT DUE PROCESS BASED ON STATE-CREATED DANGER
(Plaintiff v. Defendants Brown and the John Doe Defendants)

55. The Plaintiff realleges each foregoing paragraph of this Complaint as if fully restated here.

56. This judicial district recognizes that the state's failure to protect an individual against private violence may be a violation of the Due Process Clause where either (i) there is a special relationship between the parties, or (ii) the state-created danger doctrine applies. *Arriaga v. Dart*, 2021 WL 308829 (N.D. Ill 2021); *Estate of Her v. Hoeppner*, 939 F.3d 872 (7th Cir. 2019); *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993); *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989).

57. A due process claim based on the state-created danger exception requires proof that (1) the government, by its affirmative acts, created or increased a danger to the plaintiff; (2) the government's failure to protect against the danger caused the plaintiff's injury; and (3) the conduct in question "shocks the conscience." *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015) (quotation marks omitted). The third element—conscience-shocking conduct—requires a culpable state of mind equivalent to deliberate indifference. *King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 819 (7th Cir. 2007); *see Slade v. Bd. of Sch. Dirs. of Milwaukee*, 702 F.3d 1027, 1033 (7th Cir. 2012).

58. At all times, Plaintiff has a federal law right to bodily integrity as well as a right not to be placed in danger by state officials.

59. By the Chicago Police Department's and John Doe's affirmative acts, Defendants created and/or

increased the danger to Plaintiff that he would be robbed and attacked by Brownlee and his crew, namely, by enacting, following, and misapplying the non-pursuit policy.

60. The state-created danger in this case is at least that the City and the Defendants officers knew of Brownlee's violent acts, knew of his whereabouts, and because of (1) the City's enactment and maintenance of the non-pursuit policy, and (2) the individual officers' misapplication of the non-pursuit policy, Brownlee was able to attack Earley and shoot him.

61. This case goes beyond Brownlee being a danger, and, instead, involves the City of Chicago and the individual Defendants creating and increasing the danger to Earley from Brownlee and his crew because of the enactment, maintenance, and application of the non-pursuit policy.

62. At all times, Defendants Lightfoot's and Brown's actions in passing and maintaining the policy shocks the conscience in that they acted with extreme recklessness in enacting and maintaining the non-pursuit policy, knowing full well that there was a high probability that the policy would chill and hamper rank-and-file officers from engaging in pursuits to stop criminals such as Brownlee and his crew.

63. At all times, Defendants Lightfoot's and Brown's actions in passing and maintaining the policy shocks the conscience acted in that they acted with deliberate indifference in enacting and maintaining the non-pursuit policy, knowing full well that there was a high probability that the policy would chill and hamper rank-and-file officers from engaging in pursuits to stop criminals such as Brownlee and his crew.

64. Defendants' actions were the actual proximate cause of Plaintiff's injuries because the enactment, Maintenance, and application of the non-pursuit policy created and increased the danger to Plaintiff as to Brownlee and his crew.

65. Based on the Defendants' enactment, maintenance, and application of the non-pursuit policy, the

state affirmatively created a danger for members of the public and Plaintiff was a foreseeable victim. *See, e.g.*, *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993).

66. The GPS tracking system in the vehicle allowed Chicago to track the immediate location of the vehicle to include immediately within the vicinity of Earley or at multiple places in the City.

67. Everyone around the stolen vehicle, including Plaintiff, was a foreseeable victim of Brownlee and his crew, and Defendants at all times were aware of the vehicle's location due to reports and the GPS tracking system.

68. The Defendants' actions shock the conscience in that the application of the non-pursuit policy in this instance directly caused Earley's injuries from Brownlee in that, but for the policy, the police would have stopped and apprehended Brownlee at numerous points in his rampage.

69. In this case, the Defendants' actions are not merely negligent or a product of bad decisions, but amount to gross recklessness in that Defendants were specifically aware of the danger posed by Brownlee and his crew, were specifically aware of locations to apprehend him, but due to the enactment, maintenance, and application of the non-pursuit policy Brownlee and his crew's rampage continued and exacerbated.

70. By Defendants' actions, Plaintiff suffered the damages noted herein.

71. Qualified immunity does not apply in this case. *See White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *Archie v. City of Racine*, 847 F.2d 1211 (7th Cir. 1988); *Monfils v. Taylor*, 165 F.3d 511 (7th Cir. 1998); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979); *Reed v. Gardner*, 986 F.2d 1122, 1126 (7th Cir. 1993).

For the foregoing reasons, Plaintiff requests that this Honorable Court enter judgment in his favor, and against Defendants, and enter and order all appropriate relief, to include compensatory damages in an amount to be determined at trial, make whole relief for all losses resulting from Defendants' deprivations of Plaintiff's constitutional rights, injunctive relief requiring Defendants to

cease and desist from failing to act as outlined herein, reasonable attorneys' fees and litigation costs, pre-judgment interest, and all other available and appropriate relief.

## COUNT III: INDEMNIFICATION
(Plaintiff v. Defendant City of Chicago, Illinois)

72. The Plaintiff realleges each paragraph of this Complaint as if fully restated here.

73. Illinois statute provides that local public entities such the City of Chicago is obligated to assume financial responsibility for the wrongful actions committed by their officials or employees, including the other individual Defendants named herein and/or subsequently discovered, and to pay judgments against such individuals. *See, e.g.,* 745 ILCS §§ 10/2-301, 2-302, 9-102.

For the foregoing reasons, Plaintiff requests that this Court enter a judgment in his favor and against Defendants, and order that Defendant City of Chicago assume financial responsibility for the actions and/or omissions committed by the Individual Defendants and make Plaintiff whole in all ways.

## CONCLUSION

For the foregoing reasons, Plaintiff prays that this Honorable Court find in his favor on all Counts herein, and that the Court enter and order the relief sought in this Complaint.

## JURY DEMAND

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

*Electronically Served: February 9, 2023*

                                             Respectfully submitted,

                                             **DAKOTAH EARLEY**

                                             By:    */s/ Cass T. Casper*
                                                        */s/ Maxwell Brown*
                                                        */s/ Amanda Martin*
                                                        _____
                                                            Plaintiff's Attorneys

*Maxwell J. Brown, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 312-9783
E: mbrown@dispartilaw.com

*Amanda M. Martin, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 355
E: amartin@dispartilaw.com

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 West Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
E: ccasper@dispartilaw.com