**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DAKOTAH EARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | No.    23-cv-0801 |
| | ) | |
| v. | ) | Judge: Nancy L. Maldonado |
| | ) | |
| CITY OF CHICAGO, ILLINOIS, a municipal | ) | Magistrate Judge: David Weisman |
| Corporation; LORI LIGHTFOOT, in her capacity | ) | |
| as Mayor of the City of Chicago; DAVID O. | ) | |
| BROWN; JOHN DOE 1, a City of Chicago Police | ) | |
| Officer; JOHN DOE 2, a City of Chicago Police | ) | |
| Officer; and, the CITY OF CHICAGO, ILLINOIS, | ) | |
| a municipal corporation, as indemnitor, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

Defendants Lori Lightfoot, David Brown, and the City of Chicago (collectively, "Defendants"), by and through one of their attorneys, Marion C. Moore, Chief Assistant Corporation Counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss Plaintiff's Complaint for failure to state a claim. In support of this motion, Defendants state as follows:

## INTRODUCTION

Plaintiff Dakota Earley was the unfortunate victim of a violent armed robbery and shooting committed by a private citizen named Tyshon Brownlee. Plaintiff's Complaint, Docket No. 1, at ¶¶ 15-19. Plaintiff alleges that this private citizen had been involved in other armed robberies in the hours prior to robbing and shooting him. *Id.* at ¶¶ 20, 26, 29. Plaintiff further alleges that approximately one hour prior to the robbery, police were notified of the location of the suspected robber's vehicle (which had also been stolen) and approached it but did not pursue it. *Id.* at ¶ 29. Plaintiff claims that the John Doe officers who encountered the vehicle did not pursue it because of the City's vehicle pursuit policy and that said policy therefore caused the injuries he sustained in the robbery. *Id.* at ¶¶ 30-33. Plaintiff

brings the following claims as a result: in Count I, a *Monell* claim against the City, Lightfoot, and Brown for Deprivation of 14th Amendment Right to Due Process based on the enactment and maintenance of the pursuit policy; in Count II, a 14th Amendment Due Process claim against Brown and John Doe Officers under a "state created danger" theory; and, in Count III, an Indemnification claim against the City of Chicago.

Plaintiff's Complaint is an attempt to hold these Defendants liable for a violent act committed by a private citizen who has no affiliation with the City. As discussed more fully below, the law is clear that such liability can only occur in very limited circumstances, none of which are present here. What happened to Plaintiff is tragic, to be sure, but there is no legal foundation for his claims. His Complaint should therefore be dismissed.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, will state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's statement of claims requires more than labels, conclusions, or a recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff, *Chancey v. Suburban Bus Division of Regional Transportation Authority*, 52 F.3d 623, 626-27 (7th Cir. 1995), but may disregard a complaint's "inconceivable" allegations. *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011).

## ARGUMENT

Plaintiff's claims fail as a matter of law for multiple reasons. First, Plaintiff did not suffer a constitutional violation. Second, Plaintiff has not plausibly alleged that actions of any of the

Defendants were the proximate cause of the injuries he sustained. Third, the claims against Lightfoot and Brown are made in their official capacities and are thus duplicative of the claim against the City. Fourth, Plaintiff does not have standing to request injunctive relief.

I.     **Plaintiff's Complaint Fails to State a Claim.**

Plaintiff did not suffer a constitutional violation, nor has he sufficiently pled that the language of the vehicle pursuit policy is unconstitutional. His claims therefore fail, and the Complaint should be dismissed with prejudice.

a.     **Counts I and II fail to state an underlying constitutional violation.**

Both Counts I and II are premised on an alleged violation of 14th Amendment Due Process, with Count I being a *Monell* claim and Count II purporting to be an individual capacity claim. It is well settled that a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986-87 (7th Cir. 2021); *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012). Thus, the first question here is whether Plaintiff has plausibly alleged a violation of his constitutional rights. The answer is clearly no.

Plaintiff claims the Defendants violated his rights under the Due Process Clause. But purely private misconduct, which is what is alleged here, cannot violate those rights. *First Midwest Bank*, 988 F.3d at 983 ("it has long been settled that 'a State's failure to protect an individual against private violence ... does not constitute a violation of the Due Process Clause'")(*quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)).

In *DeShaney*, Joshua DeShaney sought to hold Winnebago County liable under *Monell* for purely private misconduct – there, brutal child abuse by his father – on the ground that the county had promulgated deficient policies that deprived him of his Fourteenth Amendment right to Due Process. *Deshaney*, 489 U.S. at 193. The Supreme Court held that Joshua suffered no constitutional

3

violation because "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. The purpose of due process is "to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196. Thus, due process "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* For that reason, "the State cannot be held liable under the [Due Process] Clause for injuries that could have been averted had it chosen to provide" such aid. *Id.* at 196-97. And because Joshua suffered no constitutional violation in the first place, the Court explained, his constitutional claim failed, *id.* at 202, making it unnecessary to consider "whether the allegations in the complaint are sufficient to support a § 1983 claim against the county and DSS under *Monell*," *id.* at 202 n.10.

After *DeShaney*, there are only two circumstances in which the government may be held liable for failing to prevent private misconduct: (1) when the plaintiff was in government custody; or (2) the government engaged in conscience-shocking misconduct that created or increased the danger to a particular, foreseeable plaintiff rather than the general public. *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998).

Here, Plaintiff is proceeding under the second circumstance mentioned above, the so-called "state-created danger" theory. This second circumstance is difficult to allege because it is extremely narrow, if even viable. *See, e.g., Jaimes v. Cook County*, 2022 WL 2806462 at *3 (7th Cir. 2022)("We have stressed that liability under the state-created danger theory has only been found under 'rare and often egregious' circumstances")(citations omitted); *Weiland v. Loomis*, 938 F.3d 917, 918 (7th Cir. 2019)(expressing doubt about whether state-created danger is a proper exception to *DeShaney*); *Marsh v. Caruana*, 2022 WL 17038962 at *4 (N.D. Ill. November 17, 2022)(Reinhard, J.)(noting the Seventh Circuit's "doubt about whether this exception was appropriately derived from *DeShaney*"). Indeed, in

*Weiland*, the Seventh Circuit exhibited doubt over whether the "state-created danger" theory can be reconciled with *DeShaney* and explained that cases finding "liability outside of prisons when the state has disabled or undermined self-help or sources of private assistance[…]have a footing in *DeShaney*" that the "three-part test," described in further detail below, "lacks." 938 F.3d at 920-21.

Even operating on the idea that the "state-created danger" theory is appropriate under *Deshaney*, no set of facts could support a "state created danger" theory in this case. As the Seventh Circuit has expressed,

> [t]he *DeShaney* exception for state-created dangers is narrow. A plaintiff must show that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury. To satisfy the proximate-cause requirement, the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons. A generalized risk of indefinite duration and degree is insufficient. Finally, because the right to protection against a state-created danger arises from the substantive component of the Due Process Clause, the state's failure to protect the plaintiff must shock the conscience.

*First Midwest Bank*, 988 F.3d at 988-89 (citations omitted). Plaintiff does not meet this standard. The City's pursuit policy and adherence to it did not "affirmatively" put Plaintiff in danger. Nor does the pursuit policy and adherence to it create a foreseeable risk to Plaintiff in particular or a foreseeable class of persons, rather than to the public in general (if at all). Nor has Plaintiff alleged any conscience shocking behavior by the City. Issuing and adhering to a policy that explains whether, when, and how to engage in vehicle pursuits does not affirmatively put anyone in danger, create a risk to a foreseeable class of persons, or come close to conscience-shocking conduct by the City or City actor.

Moreover, Plaintiff's apparent belief that the City's supposed policies affirmatively *caused*, rather than merely failed to prevent, his injuries changes nothing. For one, Plaintiff failed to allege facts plausibly showing that the City's policies were the proximate cause of his injuries, as explained below. Beyond that, the Seventh Circuit has repeatedly rejected Plaintiff's proposed distinction, explaining that while *"DeShaney might* seem distinguishable" when the government "cause[s] in a direct sense" the plaintiff's injuries, that still "does not give rise to a constitutional claim" absent a

constitutional duty arising under one of the *DeShaney* exceptions. *Tuffensdam v. Dearborn Cty. Bd. of Health,* 385 F.3d 1124, 1126-27 (7th Cir. 2004) (emphasis added); *accord Sandage v. Bd. of Comm'rs,* 548 F.3d 595, 599 (7th Cir. 2008) ("If all that were required [to establish liability] was a causal relation between inaction and harm, the rule of *DeShaney* would be undone, since, had it not been for the state's inaction in *DeShaney,* there would have been no injury."); *Slade v. Bd. of Sch. Directors,* 702 F.3d 1027, 1030-31 (7th Cir. 2012) (absent duty under *DeShaney,* "no constitutional violation" even if defendant's actions were "a significant causal factor" in plaintiff's harm).

Plaintiff has not alleged an affirmative act taken by a City actor that affirmatively placed Plaintiff in a position of danger. Plaintiff merely alleges a purported failure to act that did not change the status quo (Tyshon Brownlee driving around and robbing people). The case law supports dismissal in such a situation. Plaintiff attempts to plead around this fatal flaw by citing in his Complaint to multiple cases involving "state created danger." However, each of these cases are either inapplicable or distinguishable and actually support dismissal here. *See, e.g., Arriaga v. Dart*, 2021 WL 308829 (N.D. Ill. 2021)(allegations that supervisors took affirmative act of disclosing transgender identity of plaintiff to other employees, who in turn harassed her); *Estate of Her v. Hoeppner*, 939 F.3d 872 (7th Cir. 2019)(affirming summary judgment where operation of swimming pond did not create or increase the danger to plaintiff's decedent); *Monfils v. Taylor*, 165 F.3d 511, 518 (7 Cir. 1998)(upholding jury verdict where officer increased danger to plaintiff's decedent by failing to prevent release of tape of anonymous call); *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979)(state created a danger by arresting driver/uncle and leaving children on the side of the road in a vehicle); *Flint*, 791 F.3d at 770 (disclosure of confidential informant's identity not the cause-in-fact of his murder).

Of note here is dicta contained one of the distinguishable cases cited by Plaintiff, *Reed v. Gardner*. In *Reed*, the Seventh Circuit found that arresting an allegedly sober driver and in effect allowing an allegedly drunk one to get behind the wheel, the plaintiffs sufficiently pled state created

danger at the motion to dismiss stage. 986 F.2d at 1127. The Court reasoned that, "[b]y removing a safe driver from the road and not taking steps to prevent a dangerous driver from taking the wheel, the defendants arguably changed a safe situation into a dangerous one." *Id.* However, the Court cautioned that the decision there was "indisputably close" and even remarked that, "police officers could watch drunk drivers stumble to their cars and drive off, weaving across the road, without incurring section 1983 liability." *Id.* at 1125, 1127. Here, the City's policy and the John Doe Officers' adherence to it did not change any circumstances. It did not affirmatively put Plaintiff in danger. The allegations made by Plaintiff are nearly identical to the scenario envisioned by the *Reed* Court, where officers would not be liable even if they watched a drunk person get into a car and drive away. Accordingly, Plaintiff has not stated a constitutional violation and his claims should be dismissed.

      **b.**      **Count I also fails because Plaintiff has not alleged an unconstitutional policy.**

Even if this Court finds that Plaintiff has sufficiently alleged a violation of his constitutional rights (which it should not), Count I still fails because Plaintiff has not sufficiently alleged that the pursuit policy was unconstitutional. Plaintiffs may allege a *Monell* claim based on an express policy by the municipality. *Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005). There are two types of "express policy" claims. First, "as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun*, 408 F.3d at 379 (citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). To prevail on this first variation, Plaintiff must identify specific language in the policy that explicitly violates a person's constitutional rights. *Id.* at 381. For such a claim, one instance of the policy resulting in a constitutional violation is sufficient to establish municipal liability." *Id.* at 379–80 (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 822 (1985)). The other kind of "express policy" claim applies where the plaintiff alleges a policy omits something. *Id.* at 380. Such claims "require more evidence than a single incident to establish liability." *Id.* Here, Plaintiff fails to factually allege that the implementation of the City's pursuit policy violated Plaintiff's constitutional rights on its face. And

indeed, a look at the policy itself demonstrates that it neither expressly violates a persons constitutional rights nor does it fail to address situations in a way that violates the constitution. *See* Emergency Vehicle Operations – Eluding and Pursuing, G03-03-01, attached hereto as Exhibit 1.[1] The policy does not prevent all vehicle pursuits. *Id.* Instead, the policy creates a balancing test in order to weigh the danger to the public if a pursuit occurs with the need to detain and arrest the occupants of the subject vehicle. *Id.* Plaintiff provides no factual allegations that this policy on its face violated his constitutional rights or that it contains omissions that have caused other similar situations to his own. Therefore, Plaintiff fails to allege a *Monell* theory based on an express policy and Count I should be dismissed on that basis as well.

### c. Count III Fails if the underlying claims fail.

Count III is a claim against the City for Indemnification. Because Plaintiff has failed to establish an underlying claim for liability, the Court should dismiss the Indemnification claim against Defendant City as well. *See Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) ("[a]n indemnification claim necessarily will be tied to an underlying claim for liability"); *See also Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill. 2d 507, 533 (1987)("Where the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty"); 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable"). Therefore, should this Court grant Defendants' Motion to Dismiss as to Counts I and II, this Court should likewise enter judgment in favor of the City on Count III.

---

[1] Plaintiff's repeated reference to the policy allows for it to be attached hereto without converting this motion to one for summary judgment. *See Smith v. Rosebud Farmstand*, 909 F. Supp. 2nd 1001, 1004 (N.D. Ill. Nov. 15, 2012)("It is well-established that a court may consider documents that are concededly authentic, referenced in a plaintiff's complaint, and central to a plaintiff's claims, even if those documents are not attached to the complaint"); *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

## II.     **Plaintiff Fails to Plausibly Allege Causation**.

Plaintiff's claims fail as a matter of law because he has failed to plausibly allege that the City's policies or the act of any City employee were the cause of his injuries. Because Section 1983 was "enacted against a background of common law tort principles governing causation," those principles are generally "applicable to federal civil-rights cases." *Taliferro v. Augle*, 757 F.2d 157, 161-62 (7th Cir. 1985). The common law of proximate causation requires: (1) that there be a direct relationship between the plaintiff's injuries and the wrongful conduct alleged; and (2) that those injuries be a reasonably foreseeable consequence of that wrongful conduct. *E.g.*, *Paroline v. United States*, 572 U.S. 434, 445 (2014). Moreover, to establish *Monell* liability, it is not enough to show merely that the municipal policy was a but-for cause of the plaintiff's injuries, *e.g.*, *Wilson v. Cook Cty.*, 742 F.3d 775, 784 (7th Cir. 2014); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996); rather, municipal policies must also be the proximate cause of those injuries, *e.g.*, *Ovadal v. City of Madison*, 416 F.3d 531, 535 (7th Cir. 2005); *Spell v. McDaniel*, 824 F.2d 1380, 1388 (4th Cir. 1987); *see Exxon Co., U.S.A. v. Sofec, Inc.*, 517 U.S. 830, 838 (1996) (explaining that proximate causation is "a necessary limitation on liability").

*Monell* liability requires "a direct causal connection" between an alleged policy and a plaintiff's injuries, *J.K.J. v. Polk Cty.*, 928 F.3d 576, 599 (7th Cir. 2019), but Plaintiff alleges no facts showing a *direct* connection between any City policies – or any action by any City employee for that matter – and his injuries. Rather, he simply alleges that "as a direct and proximate cause of the Police Department's non-pursuit policy," he suffered his injuries. Plaintiff's Complaint at ¶ 33. Not only is that allegation wholly conclusory, but the other factual allegations that go along with it do not even plausibly support "but for" causation. It must also be noted that "[t]hough recent cases only include *proximate* cause (which hinges on foreseeability) as an element, it is well-established that recovering damages for a constitutional tort also requires causation in fact—'i.e., that the defendant caused the claimed injury."

*Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015)(quoting *Beard v. O'Neal,* 728 F.2d 894, 898–99 (7th Cir.1984)(other citations omitted).

Here, Plaintiff merely alleges that because of the policy, the John Doe officers did not pursue the suspect vehicle. These allegations are not sufficient to infer that because the John Doe officers did not pursue, the private citizen robbed and injured Plaintiff. There are no allegations relating to the contents of the pursuit policy or why the officers decided not to pursue. While Plaintiff alleges that, "but for" the policy, the police would have "apprehended Brownlee and his crew and prevented Earley's shooting," *Id.* at ¶ 44, this allegation is so conclusory that it does not need to be taken as true. Indeed, there is absolutely nothing to suggest that if the John Doe officers did pursue the vehicle, that they would have eventually stopped it. And if they were able to successfully stop the vehicle, that they would have also been able to detain all of the occupants. Nor could there ever be. Such allegations could never rise to anything above the speculative level and are far too removed to support a direct relationship between the decision not to pursue and Plaintiff's injuries. *See Flint*, 728 F.2d at 770-71 (linking murder of confidential informant to disclosure of his identity fails at summary judgment because it could only be based on "speculation and conjecture"). At most, Plaintiff has alleged speculative "but-for" causation, which is insufficient here. *Wilson*, 742 F.3d at 784; *J.K.J.*, 928 F.3d at 599; *Flint*, 791 F.3d at 770.

Causation is a requirement for the claims Plaintiff brings in this suit. Under this factual scenario, there are no allegations Plaintiff could put forth that would create a plausible inference that any City action was the cause of his injuries. Therefore, Plaintiff's Complaint should be dismissed at the outset.

III. **Claims against Defendants Lightfoot and Brown should be dismissed.**

If, *arguendo*, this Court does not dismiss Plaintiff's Complaint based on the arguments made above, this Court should still dismiss Defendants Lightfoot and Brown from this action. Plaintiff sues

Lightfoot and Brown in their official capacities. Plaintiff's Complaint at ¶¶ 7, 8, 10, 11, 13 (note the specific reference to the John Does being sued in "individual capacities" in ¶ 13). But "[b]ringing a § 1983 suit against a 'government employee in his official capacity is akin to suing the entity that employs him and the standard for liability is the same.'" *Edmond v. City of Chicago*, No. 17-CV-04858, 2018 WL 5994929, at *8 (N.D. Ill. Nov. 15, 2018). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Fritz v. Evers,* 907 F.3d 531, 533 (7th Cir. 2018)(citing *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989)); *see Ollie v. Atchison*, 753 F. App'x 406, 407 (7th Cir. 2019); *Phillips v. Illinois Dep't of Fin. & Prof'l Regulation*, 718 F. App'x 433, 434 (7th Cir. 2018)(citing *Will,* 491 U.S. at 70-71). In other words, official capacity claims are duplicative of the identical claim against a municipality and should be dismissed. *Id.* All allegations against Lightfoot and Brown are related to their roles as alleged policymakers. Thus, the official capacity claims are duplicative of the purported policy claim against Defendant City of Chicago and Lightfoot and Brown should be dismissed from this lawsuit.

To the extent Plaintiff claims that Count II is an attempt to sue Brown in his individual capacity, that claim should also fail. To state a claim of supervisory liability, "a plaintiff is obligated to allege that the individual directly participated in depriving him of his constitutionally protected rights, or that an official acted with deliberate indifference towards his rights." *Henderson v. Sheahan*, 1995 WL 519704 (N.D. Ill 1995). In *Henderson*, the Court stated that the plaintiff, a *pro se* inmate alleging several constitutional violations against the Cook County Jail and Cook County Sheriff in his individual capacity, "fails to allege any personal involvement on [the Sheriff]'s part in any of the alleged constitutional violations. The complaint merely alleged that the Sheriff was responsible for these violations as a supervisor and policy maker—neither of which give rise to liability in his individual capacity" *Id.* at *2. Here, Plaintiff makes no allegations that Brown was personally involved in the decision not to pursue the suspected vehicle that later was involved in the attack on Plaintiff. All

allegations relating to Brown are as his role as a policymaker and thus give rise to an official capacity claim which, as discussed above, is duplicative of the *Monell* claim against the City in Count II.

## IV.   <u>Plaintiff lacks Article III standing to request injunctive relief.</u>

In his prayer for relief in Counts I and II, Plaintiff requests "injunctive relief requiring Defendants to cease and desist from failing to act as outlined herein." Plaintiff's Complaint at pp. 8, 11-12. However, Plaintiff does not have Article III standing to seek equitable relief in this lawsuit. "Those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Plaintiffs must demonstrate that they have standing to litigate a claim—that is, a "personal stake in the outcome." *Id.* (quoting *Baker v. Carr*, 369 U.S. 186, 205 (1962)). The requirement that plaintiffs have a personal stake in the outcome serves two purposes. First, it ensures that federal courts are presented with disputes they are capable of resolving because if the parties have a legally recognizable interest in the outcome, the issues will be presented in an adversary context which, in turn, will sharpen the presentation of the issues. *Baker*, 369 U.S. at 204. Second, the personal-stake requirement "serves to prevent the courts from issuing advisory opinions – decisions on abstract questions of public interest that more appropriately are addressed to the representative branch of government." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (quoting *Warth v. Seldin*, 422 U.S. 490, 499-500 (1975) (by limiting the role of the federal courts, the personal-stake requirement ensures that "the federal courts will not intrude into areas committed to the other branches of government.").

The personal-stake requirement applies to all types of actions, including those for damages as well as those for declaratory or injunctive relief. Plaintiff bears the burden of showing that he has standing for each form of relief sought. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Simic v. City of Chicago*, 851 F.3d 734, 735 (7th Cir. 2017). To do so, he must allege an injury that is "actual and

imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. 555, 560 (1992) (quoting *Lyons*, 461 U.S. at 102). The showing required depends on the type of relief sought: for money damages, a past injury alone is sufficient to have standing. *See Lyons*, 461 U.S. at 105. But to seek prospective relief—either declaratory or injunctive—the existence of a past injury alone is insufficient to establish standing. *See Simic*, 851 F.3d at 738 ("Unlike with damages, a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief."); *Lyons*, 461 U.S. at 102 (citing *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief…if unaccompanied by any continuing, present adverse effects.").

Instead, in order to have standing to seek prospective relief, plaintiffs must demonstrate that they face a "real and immediate" threat of future injury as opposed to a threat that is merely "conjectural or hypothetical." *Simic*, 851 F.3d at 738; *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018). The seminal case on this issue is *Lyons*, in which the plaintiff alleged that he was injured during a routine traffic stop when a Los Angeles Police Department officer placed him in an unlawful chokehold. 461 U.S. at 98. The plaintiff sought, among other things, a preliminary injunction against the City of Los Angeles barring the use of chokeholds. *Id.* The Supreme Court reasoned that the plaintiff's standing to seek the injunction "depended on whether he was likely to suffer future injury from the use of [allegedly unconstitutional] chokeholds by police officers." *Id.* at 105. While the allegation of previously being choked by the police presumably afforded the plaintiff standing to seek damages against the individual officers, it did not establish "a real and immediate threat that [plaintiff] would again be stopped for a traffic violation…by an officer or officers who would illegally choke him into unconsciousness without provocation or resistance on his part." *Id.* The additional allegation made by plaintiff that Los Angeles police officers routinely applied illegal chokeholds fell "far short of the allegations that would be necessary to establish a case or controversy between [the] parties." *Id.*

The same result was reached in *Swanigan*, in which the plaintiff claimed that after being pulled over by police on suspicion of robbery, Chicago police officers unconstitutionally prolonged his detention under a "hold after detention" policy. 881 F.3d at 581. The plaintiff sought monetary relief and an injunction against the hold policy. *Id.* at 582-83. The Seventh Circuit found that the plaintiff lacked standing to seek injunctive relief because it was unlikely that he would again be harmed by the challenged hold policy. *Id.* at 583. Numerous other decisions have relied upon *Lyons* and its progeny to find that the plaintiff lacked standing to seek equitable relief. *See, e.g., Simic*, 851 F.3d at 736, 738 (finding that the plaintiff lacked standing to seek a preliminary injunction to halt enforcement of a City of Chicago ordinance prohibiting texting on a cell phone while driving because plaintiff's claimed threat of future injury was "conjectural" and "contingent upon her once again driving while using her cell phone and receiving a citation under the Chicago ordinance."); *Palmer*, 755 F.2d at 572.

Here, Plaintiff alleges only a past harm. This is insufficient to establish that Plaintiff has standing to seek equitable relief and by itself warrants dismissal of Plaintiff's prayer for such relief. Plaintiff's standing to seek equitable relief depends solely upon there being a sufficient likelihood that he will again be harmed in a similar way as a result of the City's alleged customs and practices. Plaintiff's pleading does not plausibly allege that he will be subjected to another crime committed by an offender who was not pursued by the Chicago Police immediately prior in the imminent future. Even if he did allege that, such an allegation would be nothing more than the sheer speculation rejected in *Lyons*. While it may be possible that Plaintiff could be the victim of a crime again in the future, Plaintiff would never be able to say when it would happen, nor if it would be under these same circumstances.

Finally, withholding equitable relief does not leave Plaintiff without a remedy or mean that the law serves no deterrent effect under the circumstances alleged in Plaintiff's Complaint. If Plaintiff ultimately prevails on his allegations, the remedy of damages is available to him. *See Lyons*, 461 U.S. at 112-13 (internal quotations omitted) ("[W]ithholding injunctive relief does not mean that the federal

law will exercise no deterrent effect in these circumstances. If [plaintiff] has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983."). Accordingly, Plaintiff's request for injunctive relief should be stricken.

**V.      Discovery Should be Stayed Throughout the Pendency of this Motion.**

As outlined above, this case should be dismissed in its entirety with prejudice. Accordingly, proceeding with discovery could be a waste of time and resources. Defendants therefore respectfully request that discovery be stayed while this motion is pending.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant their Rule 12(b)(6) Motion to Dismiss, and dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted,

/s/ Marion C. Moore
Chief Assistant Corporation Counsel

Marion Moore, Chief Assistant Corporation Counsel
Maxwell Evan Lisy, Assistant Corporation Counsel Supervisor
William Cook, Assistant Corporation Counsel
City of Chicago, Department of Law
Federal Civil Rights Litigation Division
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-5170
Atty. No. 6302566