IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAKOTAH EARLEY, ) | |
| ) | |
| Plaintiff, ) | Case No. 23-cv-0801 |
| ) | |
| v. ) | The Honorable Judge LaShonda Hunt |
| ) | |
| CITY OF CHICAGO, ILLINOIS, a municipal ) | Magistrate Judge M. David Weisman |
| Corporation; DAVID O. BROWN; EDUARDO ) | |
| CAMILO, JR., a City of Chicago police officer; ) | |
| GUSTAVO MARCHON, a City of Chicago police ) | |
| officer; and, the CITY OF CHICAGO, ILLINOIS, ) | |
| a municipal corporation, as indemnitor, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS
## PLAINTIFF'S AMENDED COMPLAINT

Defendants Eduardo Camilo, Jr and Gustavo Marchon ("Defendant Officers"), by one of their attorneys, Michael Dinard, Assistant Corporation Counsel, and David Brown ("Defendant Brown") and the City of Chicago ("Defendant City") by one of their attorneys, Marion C. Moore, Chief Assistant Corporation Counsel (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby move to dismiss Plaintiff's Amended Complaint for failure to state a claim. In support of this motion, Defendants state as follows:

### INTRODUCTION

Plaintiff Dakota Earley was the unfortunate victim of a violent armed robbery and shooting committed by a private citizen named Tyshon Brownlee. Plaintiff's Amended Complaint, Docket ("Doc.") No. 47, at ¶¶ 14-18. Plaintiff alleges that this private citizen had been involved in other armed robberies in the hours prior to robbing and shooting him. *Id.* at ¶¶ 19-21. Plaintiff further alleges that approximately one hour prior to the robbery, police were notified of the location of the suspected robber's vehicle (which had also been stolen) and approached it but did not pursue it. *Id.* at ¶¶ 20, 22.

Plaintiff claims that Defendant Officers did not pursue the vehicle because of the City's vehicle pursuit policy and that said actions and policy therefore caused the injuries he sustained in the robbery. *Id.* at ¶¶ 34-35. Plaintiff brings the following claims as a result: in Count I, a *Monell* claim against the City; in Count II, a 14th Amendment Due Process claim against Defendant Officers under a "state created danger" theory; and, in Count III, an Indemnification claim against the City of Chicago.

This Amended Complaint is largely similar to the initial Complaint Plaintiff filed in this matter, which was dismissed by this Court on February 26, 2024. In dismissing the initial Complaint, this Court instructed Plaintiff that certain allegations would be necessary in order for an Amended Complaint to pass muster. Doc. 40 at pp. 7, 12-16. As discussed more fully below, the Amended Complaint does not meet the threshold as ordered by this Court or as required by law and it therefore should be dismissed in its entirety, with prejudice.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that, when accepted as true, will state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A plaintiff's statement of claims requires more than labels, conclusions, or a recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 555. The Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff, *Chancey v. Suburban Bus Division of Regional Transportation Authority*, 52 F.3d 623, 626-27 (7th Cir. 1995), but may disregard a complaint's "inconceivable" allegations. *Atkins v. City of Chicago*, 631 F.3d 823, 830 (7th Cir. 2011).

**ARGUMENT**

Plaintiff's claims fail as a matter of law for multiple reasons. First, Plaintiff did not suffer a constitutional violation and has not made out a constitutional claim. Second, Plaintiff does not sufficiently allege the existence of a widespread practice, deliberate indifference on the part of a final policymaker, or moving force as to Count I. Third, Defendant Officers are entitled to qualified immunity on Count II. Fourth, the claim against Defendant Brown is made in his official capacity and is thus duplicative of the claim against the City. And fifth, if the other claims fail, so too does the Count III Indemnification claim. Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

### I.  Plaintiff did not Suffer a Constitutional Violation.

Both Counts I and II are premised on an alleged violation of 14th Amendment Due Process, with Count I being a *Monell* claim against the City and Count II a claim against the Defendant Officers. It is well settled that a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986-87 (7th Cir. 2021); *See also City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Matthews v. City of East St. Louis,* 675 F.3d 703, 709 (7th Cir. 2012). Thus, the first question here is whether Plaintiff has plausibly alleged a violation of his constitutional rights. The answer is clearly no.

Plaintiff claims the Defendants violated his rights under the Due Process Clause. But purely private misconduct, which is what is alleged here, cannot violate those rights. *First Midwest Bank*, 988 F.3d at 983 ("it has long been settled that 'a State's failure to protect an individual against private violence ... does not constitute a violation of the Due Process Clause'")(*quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). There are only two circumstances in which the government may be held liable for failing to prevent private misconduct: (1) when the plaintiff was in government custody; or (2) the government engaged in conscience-shocking misconduct that created or increased

the danger to a particular, foreseeable plaintiff rather than the general public. *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009); *Monfils v. Taylor*, 165 F.3d 511, 516 (7th Cir. 1998).

Here, Plaintiff is proceeding under the second circumstance mentioned above, the so-called "state-created danger" theory. This second circumstance is difficult to allege because it is extremely narrow, if even viable. *See, e.g., Jaimes v. Cook County*, 2022 WL 2806462 at *3 (7th Cir. 2022)("We have stressed that liability under the state-created danger theory has only been found under 'rare and often egregious' circumstances")(citations omitted); *Weiland v. Loomis*, 938 F.3d 917, 918 (7th Cir. 2019)(expressing doubt about whether state-created danger is a proper exception to *DeShaney*); *Marsh v. Caruana*, 2022 WL 17038962 at *4 (N.D. Ill. November 17, 2022)(Reinhard, J.)(noting the Seventh Circuit's "doubt about whether this exception was appropriately derived from *DeShaney*). Indeed, in *Weiland*, the Seventh Circuit exhibited doubt over whether the "state-created danger" theory can be reconciled with *DeShaney* and explained that cases finding "liability outside of prisons when the state has disabled or undermined self-help or sources of private assistance" "have a footing in *DeShaney*" that the "test" described below "lacks." 938 F.3d at 920-21.

Even operating on the idea that the "state-created danger" theory is appropriate under *Deshaney*, the facts alleged here do not support a "state created danger" theory in this case. As the Seventh Circuit has expressed,

> [t]he *DeShaney* exception for state-created dangers is narrow. A plaintiff must show that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury. To satisfy the proximate-cause requirement, the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons. A generalized risk of indefinite duration and degree is insufficient. Finally, because the right to protection against a state-created danger arises from the substantive component of the Due Process Clause, the state's failure to protect the plaintiff must shock the conscience.

*First Midwest Bank*, 988 F.3d at 988-89 (citations omitted). Plaintiff does not adequately allege an affirmative act nor conscience-shocking behavior. Additionally, Plaintiff does not adequately allege

4

cause-in-fact. Therefore, Plaintiff fails to state a constitutional claim and both Counts I and II should be dismissed.

  *a. No City actor took an affirmative act that created or increased danger to Plaintiff.*

The City's pursuit policy did not "affirmatively" put Plaintiff in danger and Plaintiff has not alleged an affirmative act taken by a City actor that affirmatively placed Plaintiff in a position of danger. Plaintiff merely alleges a purported failure to act that did not change the status quo (Tyshon Brownlee driving around and robbing people). The case law supports dismissal in such a situation.

This Court previously found that the allegations put forth by Plaintiff in his initial Complaint did not allow for a reasonable inference that the Defendant Officers engaged in an affirmative act that placed Plaintiff in danger. *See* Doc. 40 at pp. 13-14. Indeed, in ruling on the initial Motion to Dismiss, this Court held that allegations that the Defendant Officers "knew all of the facts alleged about the vehicle, Brownlee, and the crime spree, and 'initially approached' means that they turned on their sirens and lights, ordered the vehicle to pull over, pulled it over, spoke with the occupants" and then let it go, then this case "would be more analogous" to the cases that survived a motion to dismiss. Doc. No. 40 at pp. 13-14 (citing *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993). This Court noted that "this and other key facts regarding what the police knew and did require clarification" for an adequate Amended Complaint. *Id.* at p. 14. Plaintiff has not adequately alleged these facts.

The facts alleged by Plaintiff clearly show that the Defendant Officers were told there was a stolen vehicle and that said vehicle fled as soon as they approached. Doc. 47 at ¶ 22. Plaintiff attempts to plead more facts by including the Eluding Report and an Officer of Emergency Management and Communication dispatch printout, but neither of those supports the notion that the Defendant Officers knew more or did more. *Id.* at ¶¶ 22, 43. Indeed, the report demonstrates that they are First

5

District officers[1], only knew that it was a suspected stolen vehicle (the "felony" noted on the report) and that the vehicle immediately fled. The report filled out by the Defendant Officers makes no mention of other crimes or any other knowledge the Defendant Officers had – only that it "came back stolen." *Id.* at ¶ 22. The report further notes that the Defendant Officers activated their lights and the vehicle then fled at a high rate of speed. *Id.* The dispatch printout is for one incident in the 19th District involving completely other officers and notably not involving the Defendant Officers or any officers in the 1st District. *Id.* at ¶ 43. All other allegations are completely speculative or conclusory and should not be considered. Therefore, the allegations in the Amended Complaint are akin to allegations that this Court posited would be insufficient (*see* Doc. 40 at p. 13) and demonstrate that the Defendant Officers did not engage in an "affirmative act" that created or increased the danger to Plaintiff.

      b. *The Defendant Officers' conduct is not conscience-shocking.*

In ruling on the initial Motion to Dismiss, this Court explained that "courts evaluate whether conduct is conscience shocking on a spectrum." Doc. 40 at p. 8 (citing *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). If the public official has an opportunity for "reasoned deliberation" then the court considers whether the behavior involves "deliberate indifference;" however, if there is not time for "reasoned deliberation," then the plaintiff must allege an intent to harm or injure. Doc. 40 at pp. 8-10. This Court found that the circumstances presented by this case invoked the latter, and that Plaintiff must demonstrate an intent to harm. *Id.* at p. 11.

Plaintiff's allegations in the Amended Complaint are largely the same and the Court should still find that Plaintiff would have to allege intent to harm and that the Amended Complaint fails to do so. Plaintiff attempts to plead around this requirement by making the conclusory allegation that

---

[1] The district can be seen in the "beat" number. The report shows the Defendant Officers as Beat 0111, demonstrating that they were 1st District officers. The dispatch log, on the other hand, shows Beats 1962B and 1922, or officers in the 19th District.

6

the Defendant Officers engaged in "reasoned deliberation" and thus Plaintiff need only allege deliberate indifference. Plaintiff makes this allegation by claiming that the Eluding Report and the balancing test required by the pursuit policy indicate that the Defendant Officers had "at least multiple minutes" to deliberate. Doc. 47 a ¶ 26. Not so. First of all, the inclusion of the Eluding Report in the Amended Complaint demonstrates that there was no time for "reasoned deliberation" as the report states that the vehicle immediately drove away upon the activation of the emergency equipment.[2] *Id.* at ¶ 22. This provides no time for "reasoned deliberation" and is far more similar to the cases outlined in this Court's ruling on the initial Motion to Dismiss. *See* Doc. 40 at pp. 8-13. But secondly, Plaintiff does not adequately plead deliberate indifference or an intent to harm – he alleges neither. Plaintiff alleges that the Defendant Officers "simply did not want to engage in a pursuit and stood down from one for no reason whatsoever." Doc. 47 at ¶ 57. Notably, this is completely unsupported by factual detail and is rife with speculation, but more to the point – this allegation does not rise to the level of deliberate indifference to the rights of Plaintiff. At most, it is negligence. And Plaintiff makes no allegations whatsoever to imply that the Defendant Officers intended to harm or injure him or any other foreseeable plaintiff. Therefore, Plaintiff has not pleaded conscience shocking behavior and Counts I and II should be dismissed.

   c.   *Plaintiff cannot allege cause in fact.*

Plaintiff's claims fail as a matter of law because he has failed to plausibly allege that the City's policies or the act of any City employee were the cause of his injuries. Because Section 1983 was "enacted against a background of common law tort principles governing causation," those principles are generally "applicable to federal civil-rights cases." *Taliferro v. Augle*, 757 F.2d 157, 161-62 (7th Cir. 1985). Moreover, *Monell* liability requires "a direct causal connection" between an alleged policy and a

---

[2] Defendants note that the Vehicle Pursuit Policy attached as Exhibit 1 does not allow vehicle pursuits if the only suspected crime is possession of a stolen vehicle. Defendant Officers therefore did not even need to engage in deliberation.

7

plaintiff's injuries, *J.K.J. v. Polk Cty.*, 928 F.3d 576, 599 (7th Cir. 2019). It must also be noted that "[t]hough recent cases only include *proximate* cause (which hinges on foreseeability) as an element, it is well-established that recovering damages for a constitutional tort also requires causation in fact— 'i.e., that the defendant caused the claimed injury." *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015)(quoting *Beard v. O'Neal,* 728 F.2d 894, 898–99 (7th Cir.1984)(other citations omitted). This Court acknowledged this requirement in ruling on the initial Motion to Dismiss. Doc. 40 at p. 14.

In regard to the allegations in the initial Complaint, this Court stated, "[w]hile Earley's response brief speculates as to how the decision not to pursue may have affected Brownlee (e.g. by emboldening him), the complaint does not contain any allegations to support such speculation." *Id.* The Amended Complaint fairs no better. Here, Plaintiff merely alleges that because of the policy (whether it be the written policy or the chilling effect), the Defendant Officers did not pursue the suspect vehicle and if they would have pursued, the incident with Plaintiff never would have happened. Plaintiff lists off a laundry list of reasons as to why Defendants purportedly caused the incident with Plaintiff. Doc. 47 at ¶ 81. But these allegations are not sufficient to infer that because the Defendant Officers did not pursue, the private citizen robbed and injured Plaintiff. While Plaintiff alleges that, "but for" the policy, the police would have "apprehended Brownlee and his crew and prevented Earley's shooting," Doc. 47 at ¶ 81, among other speculative theories, these allegations are so conclusory and speculative that they do not need to be taken as true. Indeed, there is absolutely nothing to suggest that if the Defendant Officers did pursue the vehicle, that they would have eventually stopped it. And if they were able to successfully stop the vehicle, that they would have also been able to detain all of the occupants. And there are no factual allegations to suggest that a different pursuit policy would have changed this outcome. Nor could there ever be. Such allegations could never rise to anything above the speculative level and are far too removed to support a direct relationship between the decision not to pursue and Plaintiff's injuries. *See Flint*, 728 F.2d at 770-71

8

(linking murder of confidential informant to disclosure of his identity fails at summary judgment because it could only be based on "speculation and conjecture"). At most, Plaintiff has alleged speculative "but-for" causation, which is insufficient here. *Wilson*, 742 F.3d at 784; *J.K.J.*, 928 F.3d at 599; *Flint*, 791 F.3d at 770.

Causation is a requirement for the claims Plaintiff brings in this suit. Under this factual scenario, there are no allegations Plaintiff could put forth that would create a plausible inference that any City action was the cause of his injuries. Therefore, Plaintiff has not stated a valid constitutional claim and Counts I and II should be dismissed.

## II. Count I also Fails because Plaintiff has not Sufficiently Alleged Widespread Policy, Deliberate Indifference, or Moving Force.

Even if this Court finds that Plaintiff has sufficiently alleged a violation of his constitutional rights (which it should not), Count I still fails because Plaintiff has not sufficiently alleged the elements of his *Monell* claim. A plaintiff may seek to hold a municipality liable in three ways: because of an express policy that causes a constitutional injury when enforced, a widespread practice so permanent and well-settled that it constitutes a custom or practice; or the direct acts of a final policymaker. *First Midwest Bank*, 988 F.3d at 987. In the case of an allegation of a widespread practice, as Plaintiff alleges here, a plaintiff must meet three elements. First, they must show the existence of the widespread practice; then they must show deliberate indifference to the alleged practice, and finally show that the practice was the moving force behind the constitutional injury. *Id.*

First, Plaintiff has not sufficiently alleged that the pursuit policy was unconstitutional. It is unclear whether Plaintiff is alleging that the policy itself is unconstitutional or merely the purported widespread "chilling effect" of the pursuit policy. Accordingly, Defendants address both.

Plaintiffs may allege a *Monell* claim based on an express policy by the municipality. *Calhoun v. Ramsey*, 408 F.3d 375 (7th Cir. 2005). There are two types of "express policy" claims. First, "as the name suggests, where a policy explicitly violates a constitutional right when enforced." *Calhoun*, 408

9

F.3d at 379 (citing *Monell v. Department of Social Services*, 436 U.S. 658 (1978)). To prevail on this first variation, Plaintiff must identify specific language in the policy that explicitly violates a person's constitutional rights. *Id.* at 381. For such a claim, one instance of the policy resulting in a constitutional violation is sufficient to establish municipal liability." *Id.* at 379–80 (citing *City of Okla. v. Tuttle*, 471 U.S. 808, 822 (1985)). The other kind of "express policy" claim applies where the plaintiff alleges a policy omits something. *Id.* at 380. Such claims "require more evidence than a single incident to establish liability." *Id.* Here, Plaintiff fails to factually allege that the implementation of the City's pursuit policy violated Plaintiff's constitutional rights on its face. And indeed, a look at the policy itself demonstrates that it neither expressly violates the constitution nor does it fail to address situations in a way that violates the constitution. *See* Vehicle Pursuit Policy, attached hereto as Exhibit 1.[3] The policy does not prevent all vehicle pursuits. *Id.* The policy does not prevent vehicle pursuits of stolen vehicles. *Id.* Instead, the policy creates a balancing test in order to weigh the danger to the public if a pursuit occurs with the need to detain and arrest the occupants of the subject vehicle. *Id.* Plaintiff provides no factual allegations that this policy on its face violated his constitutional rights or that it fails to address certain issues or that the policy caused other similar situations to his own. Therefore, Plaintiff fails to allege a *Monell* theory based on an express policy and Count I should be dismissed on that basis as well. For these same reasons, and those discussed below, the conclusory allegations related to Defendant Brown also fail.

Plaintiff also appears to be alleging a widespread practice of a chilling effect on pursuits. To state such a *Monell* claim, a plaintiff must plead factual content to allow the court to draw the reasonable inference that the City maintains the problematic policy or practice in question. *McCauley*

---

[3] Plaintiff's repeated reference to the policy allows for it to be attached hereto without converting this motion to one for summary judgment. *See Smith v. Rosebud Farmstand*, 909 F. Supp. 2nd 1001, 1004 (N.D. Ill. Nov. 15, 2012)("It is well-established that a court may consider documents that are concededly authentic, referenced in a plaintiff's complaint, and central to a plaintiff's claims, even if those documents are not attached to the complaint"); *Phillips v. Prudential Ins. Co. of America*, 714 F.3d 1017, 1019-20 (7th Cir. 2013).

10

*v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). This entails "provid[ing] some **specific facts** to support the legal claims asserted in the complaint." *Id.*; *see also, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). Although the specificity of these facts is not easily quantified, it must be "enough detail about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616. Plaintiff has failed to do so.

Here, Plaintiff has mostly relied upon his experience in his Complaint. But Judge Kendall recently opined:

> To successfully plead a "widespread practice" claim, Plaintiff must allege facts showing that **at least more than one instance** of the alleged conduct occurred to establish that a practice in fact exists and that [plaintiff]'s allegedly unconstitutional arrest was not merely a random event. . . . . **Plaintiff may rely on incidents relating only to him**, . . . **but he still must allege multiple such incidents** such that the Court can draw the reasonable inference that the alleged practice was "so permanent and well settled" as to constitute custom with the force of law. **Plaintiff fails to identify a single other instance.**

*Alcorn v. City of Chicago*, 17 C 5859, 2018 WL 3614010, at *17 (N.D. Ill. July 27, 2018) (Kendall, J.) (emphasis added) (citing *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). This is the widely accepted standard for "widespread practice" *Monell* claims. Indeed, this Court found as such in ruling on the initial Motion to Dismiss. Doc. 40 at pp. 5-7. Here, Plaintiff makes mention of two incidents that occurred over a year *after* the underlying incident here, with no factual specificity, and an Instagram account. Doc. 47 at ¶ 63. These allegations do not make it plausible that such a widespread practice existed in February 2022. The two incidents alleged are *after the fact* and are not factually developed enough to imply that these incidents are similar to the incident with Plaintiff. Moreover, a random social media account showing a person driving away from officers in no way supports the notion that there is a widespread practice of officers failing to pursue vehicles that warrant pursuit. Therefore, Plaintiff has not alleged a widespread practice.

Nor has Plaintiff pleaded with any factual specificity that a policymaker was deliberately indifferent to this widespread practice or that this practice was the moving force of the conduct here.

11

Indeed, Plaintiff provides only buzzwords and conclusions as to these prongs. With no facts whatsoever to support these prongs, they fail as a matter of law. Therefore, Plaintiff has failed to plead each prong of his *Monell* claim and it should be dismissed with prejudice.

### III. <u>Defendant Officers are Entitled to Qualified Immunity.</u>

Count II likewise fails for an independent reason. Namely, that the Defendant Officers are protected by qualified immunity. The doctrine of qualified immunity shields public officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); see also *Tolliver v. City of Chicago, et. al.*, 820 F.3d 237, 244-45 (7th Cir. 2016). When examining a qualified immunity claim, the court must consider "whether that constitutional right was clearly established at the time of the alleged violation." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (citations omitted).

"A right is clearly established if it is sufficiently clear that any reasonable official would understand that his or her actions violate that right, meaning that existing precedent must have placed the statutory or constitutional question beyond debate." *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015) (citation omitted). "Viewed as a whole, the doctrine of qualified immunity erects a substantial barrier for plaintiffs, and appropriately so because qualified immunity is 'designed to shield from civil liability all but the plainly incompetent or those who knowingly violate the law.'" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir. 1994)(internal citations omitted).

Here, Plaintiff would have to demonstrate that it was clearly established that it would violate a citizen's rights for an officer to not engage in a vehicle pursuit with a private actor who later goes on to commit a crime against the citizen. It plainly is not. Plaintiff attempts to plead around this truth by alleging, in conclusory manner, that the Defendant Officers are not entitled to qualified immunity followed by a string cite to multiple cases. Doc. 47 ¶¶ 68, 88.

However, each of these cases are either inapplicable or distinguishable and in no way make the purported right that was allegedly violated "clearly established." *See, e.g., White v. Rochford*, 592 F.2d 381 (7th Cir. 1979)(state created a danger by arresting driver/uncle and leaving children on the side of the road in a vehicle); *Archie v. City of Racine*, 847 F.2d 1211 (7th Cir. 1988)(dispatcher failed to provide effective rescue services to plaintiff's decedent); *Monfils v. Taylor*, 165 F.3d 511, 518 (7 Cir. 1998)(upholding jury verdict where officer increased danger to plaintiff's decedent by failing to prevent release of tape of anonymous call); *Reed*, 986 F.2d at 1127 (officers arrest sober driver and in effect allow a drunk driver to get behind the wheel). Plaintiff did not refer to a single case involving the decision not to engage in a vehicle pursuit and then an occupant of said vehicle later on commits a crime against the plaintiff.

Simply put, the Defendant Officers are not alleged to have been "incompetent" nor was the right that Plaintiff is attempting to recover on clearly established. Moreover, as argued above, the Defendant Officers certainly did not engage in conscience-shocking or even reckless behavior and they did not "knowingly violate the law." All they did was not pursue a vehicle that was only suspected of being stolen with no way of knowing that an occupant of the vehicle would later on shoot Plaintiff. Accordingly, the Defendant Officers are entitled to qualified immunity and should be dismissed from this lawsuit.

**IV.** **Defendant Brown should be Dismissed.**

If, *arguendo*, this Court does not dismiss Plaintiff's Complaint based on the arguments made above, this Court should still dismiss Defendant Brown from this action. Plaintiff sues Brown as a "policymaker." Doc. 47 at ¶¶ 7, 8, 59. But "[b]ringing a § 1983 suit against a 'government employee in his official capacity is akin to suing the entity that employs him and the standard for liability is the same.'" *Edmond v. City of Chicago*, No. 17-CV-04858, 2018 WL 5994929, at *8 (N.D. Ill. Nov. 15, 2018). A suit against a state official in his or her official capacity is not a suit against the official but rather is

13

a suit against the official's office. *Fritz v. Evers,* 907 F.3d 531, 533 (7th Cir. 2018)(citing *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989)); *see Ollie v. Atchison*, 753 F. App'x 406, 407 (7th Cir. 2019); *Phillips v. Illinois Dep't of Fin. & Prof'l Regulation*, 718 F. App'x 433, 434 (7th Cir. 2018)(citing *Will,* 491 U.S. at 70-71). In other words, official capacity claims are duplicative of the identical claim against a municipality and should be dismissed. *Id.* Thus, the official capacity claims are duplicative of the purported policy claim against Defendant City of Chicago and Brown should be dismissed from this lawsuit.

In ruling on the initial Motion to Dismiss, this Court found that Plaintiff could only pursue an individual claim against Defendant Brown if he is "able to allege facts consistent with supervisory liability." Doc. 40 at p. 15. To state a claim of supervisory liability, "a plaintiff is obligated to allege that the individual directly participated in depriving him of his constitutionally protected rights, or that an official acted with deliberate indifference towards his rights." *Henderson v. Sheahan*, 1995 WL 519704 (N.D. Ill 1995). In *Henderson*, the Court stated that the plaintiff, a *pro se* inmate alleging several constitutional violations against the Cook County Jail and Cook County Sheriff in his individual capacity, "fails to allege any personal involvement on [the Sheriff]'s part in any of the alleged constitutional violations. The complaint merely alleged that the Sheriff was responsible for these violations as a supervisor and policy maker—neither of which give rise to liability in his individual capacity" *Id.* at *2.

This Court previously found that Plaintiff likewise did not adequately state such a claim. Doc. 40 a pp. 15-16. The Court should do so again. Here, Plaintiff makes no allegations that Brown was personally involved in the decision not to pursue the suspected vehicle that later was involved in the attack on Plaintiff. All allegations relating to Brown are as his role as a policymaker (*See* Doc. 47 at ¶¶

14

7, 8, 59)[4] and thus give rise to an official capacity claim which, as discussed above, is duplicative of the *Monell* claim against the City in Count I. Defendant Brown should be dismissed from this lawsuit.

## V. Count III Fails if the underlying claims fail.

Count III is a claim against the City for Indemnification. Because Plaintiff has failed to establish an underlying claim for liability, the Court should dismiss the Indemnification claim against Defendant City as well. *See Baskins v. Gilmore*, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018) ("[a]n indemnification claim necessarily will be tied to an underlying claim for liability"); *See also Kirk v. Michael Reese Hosp. & Med. Ctr.*, 117 Ill. 2d 507, 533 (1987)("Where the agent is not guilty, it necessarily follows that the party for whom he acted, the master, cannot be guilty"); 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable"). Therefore, should this Court grant Defendants' Motion to Dismiss as to Counts I and II, this Court should likewise enter judgment in favor of the City on Count III.

## **CONCLUSION**

Plaintiff's Amended Complaint is an attempt to hold these Defendants liable for a violent act committed by a private citizen who has no affiliation with the City. The law is clear that such liability can only occur in very limited circumstances, none of which are present here. What happened to Plaintiff is tragic, to be sure, but there is no legal foundation for his claims. For the foregoing reasons, Defendants respectfully request that this Court grant their Rule 12(b)(6) Motion to Dismiss, and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

---

[4] Moreover, it must be noted that Defendant Brown is not even listed as a defendant under any of the enumerated Counts. *See* Doc. 47 at Counts I, II, and III.

Respectfully submitted,

/s/ Marion C. Moore
Chief Assistant Corporation Counsel

Marion Moore, Chief Assistant Corporation Counsel
Maxwell Evan Lisy, Assistant Corporation Counsel Supervisor
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-5170 (Moore)
Atty. No. 6302566 (Moore)
Attorneys for Defendants City and Brown

/s/Michael J. Dinard
Assistant Corporation Counsel

Michael J. Dinard, Assistant Corporation Counsel
Jordan F. Yurchich, Assistant Corporation Counsel Supervisor
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-1975 (Dinard)
Attorneys for Defendant Officers