IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAKOTAH EARLEY, ) | |
| ) | |
| Plaintiff, ) | Case No. 23-cv-0801 |
| ) | |
| v. ) | The Honorable Judge LaShonda Hunt |
| ) | |
| CITY OF CHICAGO, ILLINOIS, a municipal ) | Magistrate Judge M. David Weisman |
| Corporation; DAVID O. BROWN; EDUARDO ) | |
| CAMILO, JR., a City of Chicago police officer; ) | |
| GUSTAVO MARCHON, a City of Chicago police ) | |
| officer; and, the CITY OF CHICAGO, ILLINOIS, ) | |
| a municipal corporation, as indemnitor, ) | |
| ) | |
| Defendants. ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT**

Defendants Eduardo Camilo, Jr and Gustavo Marchon ("Defendant Officers"), by one of their attorneys, Michael Dinard, Assistant Corporation Counsel, and David Brown ("Defendant Brown") and the City of Chicago ("City") by one of their attorneys, Marion C. Moore, Chief Assistant Corporation Counsel (collectively, "Defendants"), hereby submit their Reply in Support of their Motion to Dismiss as follows:

**INTRODUCTION**

Plaintiff's Amended Complaint does not put forth factual allegations that support the claims he brings. No matter which way he tries to spin it, the facts of the incident underlying this lawsuit do not plausibly suggest a constitutional violation, nor any other avenue of liability on the claims that he brings. Put simply, Plaintiff has failed to state a claim for relief, and his Response in Opposition to Defendants' Motion to Dismiss First Amended Complaint ("Plaintiff's Response") does not save his case.

Plaintiff claims that he has stated a claim because (1) he has adequately pled that the Defendants engaged in affirmative acts; (2) Defendants' conduct is conscience-shocking; (4) he has adequately pled causation; (4) he has plausibly pled the other *Monell* elements; and (5) the Defendant Officers are not entitled to qualified immunity. In so arguing, Plaintiff asks this Court to make leaps and bounds based on allegations and arguments that are conclusory, speculative, and outright inflammatory. *See* Plaintiff's Response at pp. 4-7. But these conclusory allegations, as inspired by rhetoric and hyperbole as they may be, are not enough to support his claims. While it is true that all **well-pled** facts must be assumed true at this stage, they need not be accepted if they are conclusory or flat-out illogical. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)(emphasis added). Indeed, the analysis is a "context-specific task" and requires a court "to draw on its judicial experience and **common sense**." *Id.* (emphasis added). Here, Plaintiff is asking this Court to make numerous assumptions based solely on conclusory allegations with absolutely no factual support. The inferences Plaintiff asks the Court to draw are unreasonable. Accordingly, the Defendants' Motion to Dismiss should be granted.

## ARGUMENT

Defendants established that Plaintiff's claims fail as a matter of law for multiple reasons. First, Plaintiff did not suffer a constitutional violation and has not made out a constitutional claim. Second, Plaintiff does not sufficiently allege the existence of a widespread practice, deliberate indifference on the part of a final policymaker, or moving force as to Count I. Third, Defendant Officers are entitled to qualified immunity on Count II. Fourth, the claim against Defendant Brown is made in his official capacity and is thus duplicative of the claim against the City. And fifth, if the other claims fail, so too does the Count III Indemnification claim. Therefore, Plaintiff's Amended Complaint should be dismissed in its entirety with prejudice.

**I.    Plaintiff did not Suffer a Constitutional Violation.**

The claims in Plaintiff's Amended Complaint fail as a matter of law. Both Counts I and II are premised on an alleged violation of 14th Amendment Due Process, with Count I being a *Monell* claim against the City and Count II a claim against the Defendant Officers. It is well settled that a plaintiff cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986-87 (7th Cir. 2021). Thus, the first question here is whether Plaintiff has plausibly alleged a violation of his constitutional rights. He has not, and his Response does not change that.

As argued in the Motion to Dismiss, purely private misconduct, which is what is alleged here, does not violate one's rights under the Due Process clause. *First Midwest Bank*, 988 F.3d at 983 ("it has long been settled that 'a State's failure to protect an individual against private violence … does not constitute a violation of the Due Process Clause'")(*quoting DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). There are only two circumstances in which the government may be held liable for failing to prevent private misconduct: (1) when the plaintiff was in government custody; or (2) the government engaged in conscience-shocking misconduct that created or increased the danger to a particular, foreseeable plaintiff rather than the general public. *See Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827-28 (7th Cir. 2009). Plaintiff is proceeding under this second exception, the so-called "state-created danger" exception.

Defendants demonstrated that the facts alleged here do not support a "state created danger" theory in this case. Indeed, Plaintiff must plausibly plead the following: (1) "that the state affirmatively placed him in a position of danger," (2) "the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons," and (3) the state's failure to protect the plaintiff must shock the conscience." *First Midwest Bank*, 988 F.3d at 988-89 (citations omitted). This exception to the general rule is extremely narrow. *See Jaimes v. Cook County*, 2022 WL 2806462 at *3 (7th Cir. 2022)("We have

stressed that liability under the state-created danger theory has only been found under 'rare and often egregious' circumstances").

Moreover, Defendants pointed out that the Seventh Circuit has called into question the viability of this theory of liability. *Weiland v. Loomis*, 938 F.3d 917, 918 (7th Cir. 2019)(expressing doubt about whether state-created danger is a proper exception to *DeShaney*); *Marsh v. Caruana*, 2022 WL 17038962 at *4 (N.D. Ill. November 17, 2022)(Reinhard, J.)(noting the Seventh Circuit's "doubt about whether this exception was appropriately derived from *DeShaney*). Plaintiff does not respond to Defendants' arguments relating to the narrowness and viability of this exception and instead focuses his response on argument that he has in fact pled that the Defendants affirmatively placed him in danger and engaged in conscience shocking behavior. His efforts do not save his claim.

    a. *No City actor took an affirmative act that created or increased danger to Plaintiff.*

Defendants have established that the City's pursuit policy did not "affirmatively" put Plaintiff in danger and that Plaintiff has not alleged an affirmative act taken by a City actor that affirmatively placed Plaintiff in a position of danger. Plaintiff merely alleges a purported failure to act that did not change the status quo (Tyshon Brownlee driving around and robbing people). The case law supports dismissal in such a situation. This Court previously found that the allegations put forth by Plaintiff in his initial Complaint did not allow for a reasonable inference that the Defendant Officers engaged in an affirmative act that placed Plaintiff in danger. *See* Docket ("Doc.") 40 at pp. 13-14. The same result should occur here.

Plaintiff claims that he has pled "at least four" actions taken by Defendants that affirmatively placed Plaintiff in danger. Plaintiff's Response at p. 3. First of all, it is unclear to Defendants what "four" acts Plaintiff is referring to. It seems that Plaintiff is claiming the actions taken by the Defendant Officers that "affirmatively" placed him in danger are (1) activating their lights, (2) attempting to conduct a traffic stop, (3) declining to pursue the vehicle Brownlee was riding in, and

4

(4) writing an Eluding Report. Plaintiff further argues that "but for Brownlee's eluding Marchon and Camilo, Earley is never shot." None of these supposed "affirmative acts" save Plaintiffs claim. Indeed, Plaintiff admits that it was approximately <u>one hour</u> after encountering the Defendant Officers that Plaintiff was shot. It cannot reasonably be said that if the Defendant Officers would have held the vehicle Brownlee was traveling in for just one minute that the incident would not have occurred. The same could be said for a traffic light or any other host of traffic issues. Additionally, even if things were altered by one minute, is it not just as likely that Brownlee's attack on Plaintiff still would have happened, just another block over? Lastly, at risk of sounding like a broken record, none of these "affirmative acts" altered the course for Brownlee: he had been driving around robbing people and continued doing so. Nothing the Defendant Officers did altered the circumstances in such a way to affirmatively place Plaintiff in danger.

Plaintiff next argues that The City "created or increased the danger" by the "passage of the non-pursuit policy." Plaintiff's Response at p. 3. This is a non-starter. Plaintiff himself admits that he is not pursuing a claim that the policy itself is unconstitutional. Nor can it reasonably be said that a policy requiring a balancing test before engaging in a pursuit affirmatively placed Plaintiff in danger. Nor can Plaintiff hang his hat on his purported "widespread practice" of officers not pursuing vehicles since the alleged violation must still come through the acts of the individual defendants. *See, e.g., First Midwest Bank*, 988 F.3d at 990. Even if that were not the case, it does not logically follow that such a widespread practice would have affirmatively placed Plaintiff in danger for the same reasons discussed above: the officers would just have not pursued and the status quo would not be changed.

Plaintiff also argues that he "has plead in spades additional knowledge of the individual officer Defendants." Response at p. 3. Not so. Plaintiff attempted to plead more facts by including the Eluding Report and an Officer of Emergency Management and Communication dispatch printout, but neither of those support the notion that the Defendant Officers knew more or did more. *Id.* at ¶¶

5

22, 43. Indeed, the report demonstrates that they are First District officers[1], only knew that it was a suspected stolen vehicle (the "felony" noted on the report) and that the vehicle immediately fled. The report filled out by the Defendant Officers makes no mention of other crimes or any other knowledge the Defendant Officers had – only that it "came back stolen." *Id.* at ¶ 22. All other allegations put forth by Plaintiff are completely speculative or conclusory and should not be considered. Therefore, the allegations in the Amended Complaint are akin to allegations that this Court posited would be insufficient (*see* Doc. 40 at p. 13) and demonstrate that the Defendant Officers did not engage in an "affirmative act" that created or increased the danger to Plaintiff.

      b. *The Defendant Officers' conduct is not conscience-shocking.*

In ruling on the initial Motion to Dismiss, this Court explained that "courts evaluate whether conduct is conscience shocking on a spectrum." Doc. 40 at p. 8 (citing *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). If the public official has an opportunity for "reasoned deliberation" then the court considers whether the behavior involves "deliberate indifference;" however, if there is not time for "reasoned deliberation," then the plaintiff must allege an intent to harm or injure. Doc. 40 at pp. 8-10. This Court found that the circumstances presented by this case invoked the latter, and that Plaintiff must demonstrate an intent to harm. *Id.* at p. 11.

Defendants demonstrated that Plaintiff's allegations in the Amended Complaint are largely the same and the Court should still find that Plaintiff would have to allege intent to harm and that the Amended Complaint fails to do so. Plaintiff opines in his Response that the Defendant Officers ran

---

[1] Plaintiff claims it is inappropriate for Defendants to explain a portion of a City of Chicago Office of Emergency Management and Communication ("OEMC") report that he copy-pasted into his Amended Complaint. Response at p. 2. But this report was copy-pasted into Plaintiff's Amended Complaint without any explanation whatsoever. By putting it into his Amended Complaint, Plaintiff has made it an issue. The explanation is not necessary anyway, since the difference in beat numbers is clear from the face of the Amended Complaint itself. The Eluding Report at paragraph 22 shows the beat of occurrence as **01**32 and the OEMC report at paragraph 43 shows the beats as "**19**--." (emphasis added) The difference is obvious on its face. Nothing in the Amended Complaint plausibly suggests otherwise.

the car in LEADS and "many minutes" could have passed between running the car and turning on lights and sirens. Plaintiff's Response at p. 6. But the relevant fact here is that the vehicle fled as soon as they approached, giving the officers no time for reasoned deliberation. Doc. 47 at ¶ 22. Whatever "deliberation" the Defendant Officers did *before* approaching the vehicle is not relevant to the inquiry because what matters here is the spit-second decision not to pursue.

Indeed, the inclusion of the Eluding Report in the Amended Complaint demonstrates that there was no time for "reasoned deliberation" as the report states that the vehicle immediately drove away upon the activation of the emergency equipment. *Id.* at ¶ 22. This provides no time for "reasoned deliberation" and is far more analogous to the cases outlined in this Court's ruling on the initial Motion to Dismiss. *See* Doc. 40 at pp. 8-13.

Nevertheless, Plaintiff argues that he has met both the "intent to harm" and "deliberate indifference" standard regardless of whether this Court finds there was time for reasoned deliberation. Plaintiff's Response at pp. 4-6. But his argument here is completely unsupported by any factual detail and is riddled with inflammatory speculation. Plaintiff argues, without any support, that it is possible that the Defendant Officers chose not to pursue in hopes that someone would get injured to "teach Brass a lesson." Plaintiff's Response at pp. 4-5. Defendants submit that the Court should give no weight to this argument because there are no facts pled to make that assumption plausible and in good faith. It is absolutely unreasonable to assume that the Defendant Officers engaged in such discussion or thought, instead of the opposite (which is far more likely to be true): encountering a vehicle known to be stolen, and not knowing anything else, and making the decision not to engage in a high-speed vehicle pursuit solely to retrieve a stolen vehicle. *See Grayson v. Pacesetter Capital Group*, 2011 WL 1897392 at *6 (N.D. Ill. May 18, 2011) ("Why is it reasonable to assume that the driver of the vehicle stopped, got out and dug up graves, and moved the bodies to another location. Why not apply Occam's razor and adopt the simpler explanation that the individual did nothing more than drive over

the plots (one example being joyriding teenage vandals)?"). Other than this wild speculation, Plaintiff offers no argument as to how the Defendant Officers' conduct constitutes intent to harm or deliberate indifference.

Defendants pause here to note that Plaintiff claims that he is entitled to conduct discovery on whether the Defendant Officers had intent to harm and what knowledge they had upon approach. But filing a complaint "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79. Plaintiff is armed with nothing more than conclusory statements and speculation and should not get to "unlock the doors of discovery." Simply put, Plaintiff's allegations do not rise to the level of deliberate indifference to the rights of Plaintiff and certainly do not rise to the level of intent to harm. At absolute most, it is negligence. Therefore, Plaintiff has not pleaded conscience shocking behavior and Counts I and II should be dismissed.

    c. *Plaintiff cannot allege cause in fact.*

Plaintiff's claims fail as a matter of law because he has failed to plausibly allege that the City's policies or the act of any City employee were the cause of his injuries. In response to Defendants' arguments related to causation, Plaintiff essentially just claims that "if [the Defendant Officers] had stopped Brownlee for even one minute in a traffic stop, Earley would have walked one-minute's worth of City blocks, and never encountered Brownlee." Plaintiff's Response at p. 7. This is not a reasonable inference to make. First of all, Plaintiff's encounter with Brownlee happened approximately one-hour after the Defendant Officers encountered Brownlee. Certainly much more was done between speeding away and encountering Plaintiff. And secondly, Plaintiff's hypothetical assumes that Brownlee's vehicle would have stopped. But we know that it did not. We know that the vehicle sped away as soon as the Defendant Officers turned on their lights. It is completely unreasonable to assume that the car would have eventually stopped and allowed the Defendant Officers to conduct a traffic stop, thereby "preventing" the interaction with Plaintiff.

8

Causation is a requirement for the claims Plaintiff brings in this suit. Under this factual scenario, there are no allegations Plaintiff could put forth that would create a plausible inference that any City action was the cause of his injuries. Therefore, Plaintiff has not stated a valid constitutional claim and Counts I and II should be dismissed.

## II.     Count I also Fails because Plaintiff has not Sufficiently Alleged Widespread Policy, Deliberate Indifference, or Moving Force.

Defendants established that Plaintiff has failed to plead all elements of his *Monell* claim. In his Response, Plaintiff clarifies that he is solely pursuing a "widespread practice" *Monell* theory. To state such a *Monell* claim, a plaintiff must plead factual content to allow the court to draw the reasonable inference that the City maintains the problematic policy or practice in question. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681). This entails "provid[ing] some **specific facts** to support the legal claims asserted in the complaint." *Id.*; *see also, e.g., Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (emphasis added). Although the specificity of these facts is not easily quantified, it must be "enough detail about the subject-matter of the case to present a story that holds together." *McCauley*, 671 F.3d at 616. Plaintiff has failed to do so.

Here, Plaintiff makes mention of two incidents that occurred over a year *after* the underlying incident here, with no factual specificity, and an Instagram account. Plaintiff's Response at p. 8. But these do not lend credence to the allegation that the purported widespread practice existed <u>at the time of the incident</u>, which is what Plaintiff needed to allege. Moreover, the Instagram account of someone committing traffic violations and "daring" police officers to chase him is not the same as police officers allegedly being aware of a string of violent crimes, having a basis to pursue, and choosing to not pursue due to some purported practice.

9

Plaintiff also relies on *White v. City*, 829 F.3d, 843-44 (7th Cir. 2016) to claim that his Amended Complaint should pass muster. Plaintiff's Response at pp. 9-10. This argument is misplaced, as *White* is distinguishable to the case at hand. In *White*, the plaintiff alleged that he was falsely arrested after a police officer filled out a "standard" complaint form issued by the police department for the procurement of arrest warrants, alleging that the standard form when filled out did not lay out facts establishing probable cause. *White*, 829 F.3d at 841. He further alleged that his arrest was caused by a city policy or practice of only filling out a conclusory standard complaint form when seeking an arrest warrant, where the form, when completed, did not establish probable cause. *Id.* The Seventh Circuit held that these allegations were sufficient to plead a *Monell* claim, even though they were short and did not allege facts related to any other arrestee, because the form used was a standard form issued by the police department; the fact that it was a "standard printed form" allowed the court to infer that others may have suffered the same injury as the plaintiff, under a policy of the defendant city. *Id.* at 844. Such is not the case here, where Plaintiff has not alleged a context where a widespread practice can be so inferred. *See, e.g., Hutton v. City of Chicago*, 2021 WL 809731, at *4 (N.D. Ill., March 3, 2021) (Valderrama, J) ("Since *White*, however, courts in this District, as noted by the City, have generally concluded that to properly state a *Monell* claim based on a custom or policy—absent context creating an inference of a widespread policy or custom, as in *White*—a plaintiff must allege *more* than his own single occurrence"). Plaintiff has not provided the facts necessary to demonstrate the "widespread practice" he is alleging.

Nor has Plaintiff pleaded with any factual specificity that a policymaker was deliberately indifferent to this widespread practice or that this practice was the moving force of the conduct here. Indeed, Plaintiff provides only buzzwords and conclusions as to these prongs. Plaintiff does not seem to contend otherwise in his Response. *See* Response at p. 10. With no facts whatsoever to support

10

these prongs, they fail as a matter of law. Therefore, Plaintiff has failed to plead each prong of his *Monell* claim and it should be dismissed with prejudice.

**III.     Defendant Officers are Entitled to Qualified Immunity.**

Defendants established that the Defendant Officers are protected by qualified immunity. The doctrine of qualified immunity shields public officials from civil liability if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); see also *Tolliver v. City of Chicago, et. al.*, 820 F.3d 237, 244-45 (7th Cir. 2016). When examining a qualified immunity claim, the court must consider "whether that constitutional right was clearly established at the time of the alleged violation." *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014) (citations omitted).

As the Court knows, qualified immunity is an affirmative defense, once raised, the burden shifts to the plaintiff to defeat it. *Purvis v. Oest*, 614 F.3d 713, 717 (7th Cir. 2010). To meet this burden, Plaintiff needed to "show either a reasonably analogous case that has both articulated the right at issue and applied it to a factual circumstance similar to the one at hand, or that the violation was so obvious that a reasonable person necessarily would have recognized it as a violation of the law." *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017), *quoting Chan v. Wodnicki*, 123 F.3d 1005, 1008 (7th Cir. 1997). Plaintiff has not done either.

Here, Plaintiff would have to demonstrate that it was clearly established that it would violate a citizen's rights for an officer to not engage in a vehicle pursuit with a private actor who later goes on to commit a crime against the citizen. In his Response, Plaintiff continues to rely on the cases he cites in his Amended Complaint. But none of these cases demonstrate that the right Plaintiff is asserting was violated was "clearly established."

11

For instance, *Reed v. Gardner*, 986 F.2d 1122, 125, 1127 (7th Cir. 1993), involved officers arresting a sober driver and in effect allowing a drunk driver to get behind the wheel. In *Ross v. United States*, 910 F.2d 1422 (7th Cir. 1990), the court determined that a complaint survived dismissal where it alleged an individual defendant made an affirmative decision, pursuant to an alleged policy, to prevent rescue divers from attempting to rescue a boy who was lost in the water, which ultimately caused the boy's death. *Id.* at 1424-25, 1431-33. *White v. Rochford*, 592 F.2d 381 (7th Cir. 1979) found that the state created a danger by arresting a driver/uncle and leaving children on the side of the road in a vehicle. These are all clearly distinguishable from the case at hand.

Plaintiff did not refer to a single case involving the decision not to engage in a vehicle pursuit and then an occupant of said vehicle later on commits a crime against the plaintiff. The Defendant Officers certainly did not engage in conscience-shocking or even reckless behavior and they did not "knowingly violate the law." All they did was not pursue a vehicle that was only suspected of being stolen with no way of knowing that an assumed occupant of the vehicle would later on shoot Plaintiff. Accordingly, the Defendant Officers are entitled to qualified immunity and should be dismissed from this lawsuit.

**IV.     Defendant Brown should be Dismissed.**

Plaintiff concedes that the allegations against Defendant Brown are duplicative and has agreed to dismiss him from this lawsuit. Plaintiff's Response at p. 15. Accordingly, Defendant Brown should be dismissed.

**V.     Count III Fails if the underlying claims fail.**

In his Response, Plaintiff does not contest Defendants' argument that Count III fails if Counts I and II fail. See Plaintiff's Response at p. 15. Accordingly, if this Court dismisses Counts I and II, it should likewise dismiss Count III.

**CONCLUSION**

For the foregoing reasons and the reasons stated in their Motion, Defendants respectfully request that this Court grant their Rule 12(b)(6) Motion to Dismiss, and dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

Respectfully submitted,

/s/ Marion C. Moore
Chief Assistant Corporation Counsel

Marion Moore, Chief Assistant Corporation Counsel
Maxwell Evan Lisy, Assistant Corporation Counsel Supervisor
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-5170 (Moore)
Atty. No. 6302566 (Moore)
Attorneys for Defendants City and Brown

/s/ Michael J. Dinard
Assistant Corporation Counsel

Michael J. Dinard, Assistant Corporation Counsel
Jordan F. Yurchich, Assistant Corporation Counsel Supervisor
City of Chicago, Department of Law
2 N. LaSalle Street, Suite 420
Chicago, Illinois 60602
(312) 744-1975 (Dinard)
Attorneys for Defendant Officers