IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAKOTAH EARLEY,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, ILLINOIS, a municipal corporation; DAVID O. BROWN; EDUARDO CAMILO, JR., a City of Chicago police officer; GUSTAVO MARCHON, a City of Chicago police officer; and, the CITY OF CHICAGO, ILLINOIS, a municipal corporation, as indemnitor,<br><br>    Defendants. | Case No. 23 C 801<br><br>Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dakotah Earley sued Defendants City of Chicago, former police superintendent David O. Brown, and police officers Eduardo Camilo, Jr. and Gustavo Marchon under 42 U.S.C. § 1983 for violation of the 14th Amendment Due Process Clause, to recover for grave injuries he suffered during an armed robbery he claims to have been caused by a policy that chills and hampers police officers from pursuing fleeing suspects. Currently before the Court is Defendants' motion to dismiss Plaintiff's first amended complaint. (Mot., Dkt. 63). For the reasons discussed below, Defendants' motion is granted and this action is dismissed with prejudice.

## BACKGROUND

### I. Original Complaint

Plaintiff commenced this action on February 9, 2023, by filing a complaint against the City, Brown, former mayor Lori Lightfoot, and two unidentified police officers. (Compl., Dkt. 1). In the original complaint, Plaintiff asserted claims against the City, Brown, and Lightfoot under *Monell*

1

*v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), based on the City's motor vehicle pursuit policy; claims against Brown and the unknown officers under 42 U.S.C. § 1983 for violating the 14th Amendment Due Process Clause based on the state-created danger exception; and a claim against the City for indemnification of any recovery on the first two claims. (*Id.*)

## II.     Dismissal of Original Complaint

On February 26, 2024, the Court entered a memorandum order and opinion dismissing the original complaint without prejudice. (Dkt. 40). Although familiarity with the previous ruling is assumed, briefly, the Court held as follows: (1) the *Monell* claim failed in part because Plaintiff alleged only one constitutional violation resulting from the pursuit policy; (2) the state-created danger claim failed because (a) Plaintiff did not allege that the decision not to pursue the suspect that later injured Plaintiff was made with intent or purpose to harm or injure, (b) Plaintiff did not sufficiently allege details about the circumstances surrounding the decision not to pursue, and (c) Plaintiff did not adequately allege that the decision not to pursue had in fact caused his injuries; and (3) the indemnification claim failed because it was dependent on the other claims. (Dkt. 40 at PageID # 218-228).[1]

## III.     First Amended Complaint

On March 25, 2024, Plaintiff filed a first amended complaint ("FAC"). (FAC, Dkt. 47). Because the FAC essentially repeats the allegations of the original complaint with new allegations aimed primarily at curing the defects addressed by the February 2024 ruling, the Court will not

---

[1] Unless otherwise noted, page numbers in citations to the docket reference the PageID # in the CM/ECF header, not other page numbers in the header or footer of the document.

provide a detailed recitation of facts alleged.[2] For purposes of this ruling, the following new allegations are relevant.

### A. The Parties

First, the FAC replaces the unknown police officer defendants with Eduardo Camilo, Jr. and Gustavo Marchon, who Plaintiff alleges were the officers that decided not to pursue the stolen vehicle before one of its passengers robbed and shot Plaintiff. (FAC ¶¶ 5-13). Plaintiff also dropped Lightfoot from the suit. (*Id.*)

### B. Pursuit Policy

With respect to the pursuit policy, the FAC clarifies that the specific language Plaintiff contends caused his injuries is as follows: "The Department will not discipline any member for terminating a vehicle pursuit." (*Id.* ¶ 53 (quoting Emergency Vehicle Operations – Eluding and Pursuing, § II, B)). In addition, Plaintiff alleges that the balancing test contained in the policy itself calls for cool and reasoned deliberation over the decision whether to pursue a fleeing vehicle. (*Id.* ¶¶ 26, 53 ("The initiation, continuation, and supervisory authorization of each motor vehicle pursuit must confirm to the following **BALANCING TEST: The necessity to immediately apprehend the fleeing suspect outweighs the level of inherent danger created by a motor vehicle pursuit**.") (quoting Emergency Vehicle Operations – Eluding and Pursuing § IV, A) (emphasis in original)).

According to Plaintiff, the lack of consequences for declining to pursue causes officers to misapply the balancing test, thereby creating or increasing the risk fleeing suspects pose to the community. (*Id.* ¶¶ 50-52). As applied to this case, Plaintiff alleges that officers Camilo and

---

[2] The Court's previous ruling contains a more fulsome summary of Plaintiff's allegations. (Feb. 26, 2024 Order at 214-217).

3

Marchon chose not to pursue due to the lack of consequences, even though that decision was inconsistent with the balancing test because the risk of giving chase was minimal. (*Id.* ¶ 55). Plaintiff further provides three additional examples of instances in which officers declined to pursue suspects who went on to commit further crimes. (*Id.* ¶ 63).

  C. <u>**Officers' Decision Not to Pursue**</u>

Focusing on the decision of officers Camilo and Marchon in this case, the FAC adds allegations about information they knew and circumstances that existed at the time of the attempted traffic stop. Specifically, Plaintiff included a copy of the Eluding Incident Report completed by the officers following the interaction. According to the report, the officers were dispatched to the location to assist another unit; upon arrival, the subject vehicle was parked and came back as stolen under a records search; officers turned on their lights and attempted to conduct a traffic stop; the vehicle fled, weaved, and traveled at high rates of speed; conditions were rainy, wet, and dark with lighting; the violation known at the beginning of the incident was listed as "felony"; there was no vehicular or pedestrian traffic; officers did not pursue; according to the traffic safety commander, the officers "followed department guidelines on eluding and pursuing[.]" (*Id.* ¶ 22).

Based on this report, Plaintiff contends that Defendants Camilo and Marchon "had at least multiple minutes to decide whether to pursue" the vehicle after it fled the scene. (*Id.* ¶ 26). In addition, Plaintiff believes that, at the time of the attempted traffic stop, Defendants Camilo and Marchon knew the vehicle was involved in multiple violent criminal acts in the prior days, including armed robberies. Plaintiff's belief is based in part on the listing of "felony" as the violation known at the time of the incident on the eluding report and in part on dispatch logs showing a connection between the vehicle and the several armed robberies. (*Id.* ¶¶ 35(a), 41-45).

4

### D. Causal Connection to Plaintiff's Injuries

Finally, the FAC adds allegations meant to show that the pursuit policy and the officers' decision not to pursue the stolen vehicle caused Plaintiff's injuries. Specifically, Plaintiff alleges that he would not have been injured if the officers had instead pursued the vehicle, which would have at least delayed the vehicle or altered its course such that it would never have come across Plaintiff. (*Id.* ¶ 35). Alternatively, if officers were able to stop the vehicle, they would have been able to arrest the passengers, eliminating the opportunity for them to rob and shoot Plaintiff. (*Id.*) But instead, because the officers did not pursue, Plaintiff claims that the criminals in the vehicle were emboldened and given the impression that they were unstoppable and invincible and could continue on their crime spree without consequences. (*Id.*)

### E. Claims Asserted

The FAC asserts the same three claims as the original complaint. In Count I, Plaintiff asserts a *Monell* claim against the City based on the theory that the pursuit policy has chilled and hampered officers from pursuing criminals, thereby creating and increasing danger to members of the public like Plaintiff. In Count II, Plaintiff asserts individual Section 1983 state-created danger claims against Camilo, Marchon, and Brown,[3] based on the theory that the officers' decision not to pursue under the policy caused Plaintiffs' injuries. Count III realleges an indemnification claim against the City based on any liability determined under Counts I and II.

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal based on a complaint's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

---

[3] Plaintiff subsequently agreed to dismiss all claims against Defendant Brown as duplicative. (Resp., Dkt. 77 at 365).

5

In determining whether a complaint states a claim under Rule 12(b)(6), all non-conclusory factual allegations must be accepted as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In addition, the complaint must be construed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Generally, only the plaintiff's complaint, exhibits, matters central to the claims and incorporated by reference, and items subject to judicial notice may be considered. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Twombly*, 550 U.S. at 556). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is warranted. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

In response to the FAC, Defendants moved for dismissal again. (Dkt. 63). Defendants broadly argue that the FAC still fails to state a claim for many of the same reasons they sought dismissal of the original complaint. Specifically, Defendants contend that Plaintiff did not suffer a constitutional violation; there are insufficient allegations of a widespread practice, a final policymaker's deliberate indifference, or moving force; the officers are entitled to qualified immunity; and the indemnification claim falls with the others. (*Id.* at 292). Because Plaintiff's claims all depend on the existence of a constitutional violation under the state-created danger

exception to the 14th Amendment Due Process Clause, that is where the Court will begin its analysis.

Although the government's "failure to protect an individual against private violence . . . does not constitute a violation of the [14th Amendment] Due Process Clause[,]" *First Midwest Bank Guardian of Est. of LaPorta v. City of Chi.*, 988 F.3d 978, 983 (7th Cir. 2021) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989)), courts have recognized an exception that "applies when the state 'affirmatively places a particular individual in a position of danger the individual would not otherwise have faced.'" *First Midwest Bank*, 988 F.3d at 988 (quoting *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 916 (7th Cir. 2015) (quoting *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009))).[4] The state-created danger exception applies in the following narrow circumstances:

> A plaintiff must show that the state affirmatively placed him in a position of danger and that the state's failure to protect him from that danger was the proximate cause of his injury. To satisfy the proximate-cause requirement, the state-created danger must entail a foreseeable type of risk to a foreseeable class of persons. A generalized risk of indefinite duration and degree is insufficient. Finally, because the right to protection against a state-created danger arises from the substantive component of the Due Process Clause, the state's failure to protect the plaintiff must shock the conscience. Only the most egregious official conduct will satisfy this stringent inquiry.

*First Midwest Bank*, 988 F.3d at 988-989 (citations and quotations omitted).

There are two standards for determining whether a public official's conduct "shocks the conscious." If there is an opportunity for "reasoned deliberation," then conduct will be considered

---

[4] The Seventh Circuit has recently expressed doubt about the state-created danger exception's footing in *DeShaney* in *Weiland v. Loomis*, 938 F.3d 917, 921 (7th Cir. 2019), but the Court need not reach that specific issue because it does not apply here.

"conscience shocking when it evinces a deliberate indifference to the rights of the individual." *King ex. rel King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818-819 (7th Cir. 2007). But "where circumstances call for hurried judgments in order to protect the public safety or maintain the public order, and thereby render reasoned deliberation impractical, conduct must reach a higher standard of culpability approaching malicious or intentional infliction of injury before [courts] shall deem official conduct conscience shocking." *King*, 496 F.3d at 819. As discussed at length in the Court's prior opinion, the higher standard generally applies to decisions involving in high-speed police chases and analogous situations. (*See* Feb. 26, 2024 Order at 221-226 (discussing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (concluding that officer's decision to pursue a motorcycle at high speeds with no intent to harm did not give rise to liability when officer's car struck and killed motorcycle passenger); *Bublitz v. Cottey*, 327 F.3d 485, 491-492 (7th Cir. 2003) (holding that officers who deployed spike strips to stop fleeing vehicle resulting in collision that killed plaintiff's wife and child were not liable, even though they had three to five minutes to consider decision); *Schaefer v. Goch*, 153 F.3d 793, 798 (7th Cir. 1998) (applying higher "purpose of harm" standard in case where officer shot and killed woman during standoff with her husband)).

Plaintiff now argues Defendants' conduct should be measured by the lower deliberate indifference standard because the details of the eluding report show that the officers had an opportunity for reasoned deliberation. Alternatively, Plaintiff contends that the allegations support a scenario where the officers had intent to injure. The Court rejects Plaintiff's first argument and wholeheartedly disagrees with the second.

In support of Plaintiff's contention that the lower deliberate indifference standard should apply, he focuses on the circumstances surrounding the attempted traffic stop, as recorded in the eluding report. Because the report indicates that the vehicle was parked and officers ran a records

search on the vehicle, Plaintiff speculates that it "might [have been] many minutes . . . [or] an hour" before officers activated their lights and sirens. (Resp. at 356). Plaintiff thus concludes that it is reasonable to infer the officers had ample time to engaged in reasoned deliberation. But Plaintiff's theory focuses too narrowly on the time period *before* officers attempted to stop the vehicle and decided not to pursue. The relevant period here also includes the moment when the officers attempted to stop the vehicle, it fled at high speeds, and they decided not to pursue. According to the eluding report, although there was no vehicular or pedestrian traffic in the immediate area, conditions were rainy, wet, and dark with lighting and when the officers "activated their emergency equipment lights and attempted to conduct a traffic stop[, the] vehicle fled from [the] traffic stop going at a high rate of speed . . . [,] and [the officers] did not pursue[.]" (FAC ¶ 22). The only reasonable inference to be drawn from these allegations is that, faced with fluid, rapidly developing circumstances, the officers had to make a decision that "call[ed] for hurried judgments in order to protect the public safety or maintain the public order, and thereby render[ed] reasoned deliberation impractical[.]" *King*, 496 F.3d at 819. The officers' conduct therefore "must reach a higher standard of culpability approaching malicious or intentional infliction of injury before [the Court] shall deem official conduct conscience shocking." *Id.* The fact that the policy includes a balancing test that calls for consideration of various factors does not necessarily mean that officers had the opportunity to engage in such deliberation. Indeed, the allegations do not support such a conclusion in this case.

Plaintiff alternatively argues that the allegations are sufficient, even under the higher standard of intent or purpose to harm or injure. In that regard, Plaintiff states that "it is conceivable that disgruntled CPD officers were quietly hoping for citizen injuries as part of an overall dissatisfaction with the CPD's non-pursuit policy." (Resp. at 354). Plaintiff went so far as to

include a fictionalized conversation between the officers in which one says to the other: "I hope someone gets hurt to teach the Brass a lesson." (*Id.*) This argument has absolutely no basis in the facts alleged in this case, and it is beyond unreasonable to speculate that the officers had any such discussion. This inflammatory argument borders on bad faith and thus merits no further consideration.

In sum, even with the additional details included in the FAC, Plaintiff has not demonstrated that the Court should conclude the officers had an opportunity for reasoned deliberation or the higher standard requiring intent or purpose to harm or injure is satisfied. The FAC therefore fails to allege that the officers' conduct "shocks the conscious" as required to state a 14th Amendment Due Process claim under the state-created danger exception.

Plaintiff's state-created danger claim also fails because the allegations are insufficient to support causation. In addition to satisfying the proximate-cause requirement by alleging a foreseeable type of risk to a foreseeable class of persons,[5] a state-created danger claim must allege causation-in-fact. *Flint v. City of Belvidere*, 791 F.3d 764, 770 (7th Cir. 2015) ("it is well-established that recovering damages for a constitutional tort also requires causation in fact—'i.e., that the defendant caused the claimed injury[.]'") (quoting *Beard v. O'Neal,* 728 F.2d 894, 898-899 (7th Cir. 1984)). Theories of causation that depend on speculation and conjecture are insufficient. *Flint*, 791 F.3d at 770-771.

Without citing any authority, Plaintiff asserts that "causation-in-fact could not be clearer in this case: if [the officers] had stopped [the suspect], [he] would never have been at the place where he shot Plaintiff." (Resp. at 357). To support this theory of causation, Plaintiff relies

---

[5] The Court previously held that Plaintiff had sufficiently alleged proximate cause because Plaintiff fell within the class of foreseeable victims, (Feb. 26, 2024 Order at 227), and the parties do not contest that issue.

primarily on the timing and a list of events that might have occurred if the officers had pursued. (*Id.*; FAC ¶ 35, 81). According to Plaintiff, if the officers had pursued the vehicle, they might have delayed it, rerouted it, or eventually made arrests, all such that the occupants would have never encountered Plaintiff an hour after the failed stop. (*Id.*) Instead, because the officers did not stop the vehicle, Plaintiff believes that the occupants were emboldened to continue on their crime spree and he was the unfortunate next victim. (*Id.*)

The chain of causation Plaintiff relies upon is simply too speculative and attenuated to support his claims. Plaintiff's "but-for" theory of causation involves several hypothetical steps not found in the facts he alleged. Rather, the allegations support only that the officers decided not to pursue the vehicle and approximately one hour later the occupants of the vehicle injured Plaintiff. To make the logical leap from decision to injury, the Court would have to accept multiple assumptions and inferences that are not supported by the FAC. Furthermore, Plaintiff's belief that the vehicle's occupants were emboldened is just that—a belief—and such conjecture is not enough to give rise to a constitutional tort. Accordingly, Plaintiff has failed to allege facts to support a plausible theory of causation-in-fact and his claims fail for that reason as well.

As discussed in the Court's prior opinion, the officers' knowledge at the time of the decision not to pursue is critical to determining whether their conduct created or increased a danger. (*See* Feb. 26, 2024 Order at 226 (citing *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993), *cert. denied*, 510 U.S. 947 (1993) ("It was the police action in removing [the sober driver], *combined with their knowledge of [the passenger's] intoxication*, which creates their liability for the subsequent accident.") (emphasis added)). Plaintiff's argument in this regard is two-fold. First, Plaintiff claims that in activating their lights, attempting to stop the vehicle, deciding not to pursue, and completing the report, the officers engaged in four distinct acts that created or increased

danger. Based on the eluding report and dispatch logs, Plaintiff asserts that the officers knew about the violent crimes committed by the vehicle's occupants when engaging in those acts. Second, Plaintiff contends that enactment of the pursuit policy itself created or increased danger to him.[6] In response, Defendants dispute whether the eluding report and dispatch logs show that the officers had such knowledge and argue that nothing the officers did changed the status quo—i.e., that the vehicle's occupants were driving around robbing people at gun point.

The Court agrees that the eluding report and dispatch logs do not state or support a reasonable inference that the officers knew about the crimes of the vehicle's occupants at the time of the attempted stop and decision not to pursue. In the section of the eluding report for "Violation Known at Beginning of Incident," the report states "Felony." (FAC ¶ 22). Later in the report, the officers wrote that the vehicle "came back stolen" in a records search. (*Id.*) But neither of those pieces of information nor any other content in the report remotely suggests that the officers knew about the armed robberies committed by the vehicle's occupants when they decided not to pursue. Turning to the dispatch logs, they clearly include content regarding the armed robberies, but the FAC fails to provide any context or sufficiently allege that the officers knew that information at the relevant time.[7] (*Id.* ¶ 44). Although Plaintiff believes that the officers "were aware from communications from dispatch that the vehicle they approached was the vehicle described in the

---

[6] Specifically, Plaintiff states: "Second, Plaintiff pleads an entirely different affirmative act by Defendant City that created and increased the danger, which is the passage of the non-pursuit policy." See Dkt. 47 at ¶¶ 36, 51, 53-54." (Resp. at 353-354). This argument is rejected as undeveloped and unsupported by factual allegations. Plaintiff made no attempt to argue or cite any authority and the allegations of the FAC Plaintiff cites are entirely conclusory.

[7] The parties dispute the meaning of the unit or "beat" numbers in the dispatch logs, whether those numbers shows that the officers were communicating information about the logs, and if the Court may even consider the meaning of those numbers because an explanation is not included in the pleading. (Mot. at 295 n.1; Resp. at 353; Reply, Dkt. 81 at 377 n.1). While the Court agrees with Defendants that an explanation of the information in the logs might have been helpful, it need not reach the issue because the allegations regarding the dispatch logs are insufficient to show knowledge in any event.

above [dispatch logs,]" (*id.* ¶ 45), that allegation is conclusory. There is a difference between the officers knowing that the vehicle they approached was the vehicle described in the dispatch logs and knowing that the vehicle they approached was connected to the armed robberies mentioned in the logs or knowing the contents of the logs themselves. Without such knowledge, *Reed* instructs that the officers cannot be held liable for injuries subsequently caused by the occupants. 986 F.2d at 1125. Therefore, the FAC does not sufficiently allege any affirmative act by Defendants that created or increased a danger to Plaintiff.

      Having determined that the FAC fails to plausibly allege a constitutional violation under the 14th Amendment Due Process Clause state-created danger exception, Plaintiff's *Monell* and indemnification claims necessarily fail as well. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (observing that *Monell* does not authorize liability for damages absent constitutional harm); *First Midwest*, 988 F.3d at 986 (stating that a plaintiff must prove a deprivation of a constitutional right to prevail on a *Monell* claim); *Baskins v. Gilmore,* No. 17 C 7566, 2018 WL 4699847, at *12 (N.D. Ill. Sept. 30, 2018)) ("[a]n indemnification claim necessarily will be tied to an underlying claim for liability"). Therefore, the Court need not reach the issues specific to the *Monell* claim or the qualified immunity defense. Finally, because Plaintiff already had an opportunity to amend, leave to amend has not been requested again, and it is clear that any amendment would be futile based on the foregoing analysis, *see Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013), the Court dismisses Plaintiff's FAC *with prejudice*.

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is granted and this action is dismissed with prejudice.

**DATED**: March 11, 2025        **ENTERED**:

*LaShonda A. Hunt*
LaShonda A. Hunt
United States District Judge